541 S.W.2d 841 (1976)
R---- E---- M----, Appellant,
v.
The STATE of Texas, Appellee.
No. 15645.
Court of Civil Appeals of Texas, San Antonio.
June 30, 1976.
Rehearing Denied July 30, 1976.
*843 Eugene H. Lieck, San Antonio, for appellant.
Ted Butler, Crim. Dist. Atty., Douglas C. Young, Asst. Dist. Atty., San Antonio, for appellee.
CADENA, Justice.
Appellant seeks reversal of an order of the juvenile court of Bexar County transferring the murder charge against him to the district court so that he may be tried as as adult for such offense.
A previous order of the juvenile court transferring appellant for trial as an adult for this same offense was reversed by this Court on the ground that, prior to the hearing on the State's motion to transfer, the juvenile court had not obtained a diagnostic study as required by Sec. 54.02(d) of the Tex.Family Code.[1]R. E. M. v. State, 532 S.W.2d 645 (Tex.Civ.App., San Antonio 1975, no writ).
We consider first appellant's point 1, asserting that the juvenile court lacked jurisdiction to entertain the transfer motion, since, prior to the time that the motion for transfer was filed, the State had filed its petition seeking to have appellant adjudged delinquent for the same offense.
Under Sec. 54.02(a)(1) and Sec. 54.02(a)(2) of the Tex.Family Code, the juvenile court may "waive" its exclusive jurisdiction over juvenile offenders and transfer a child to district court for prosecution as an adult if the child is alleged to have committed an offense of the grade of felony when he was fifteen years of age or older "and no adjudication hearing has been conducted concerning that offense." Since no adjudication hearing has been held in juvenile court concerning the offense in question, this provision of the Family Code presents no problem.
The offense in question was allegedly committed on April 8, 1974. The petition seeking to have appellant adjudged delinquent was filed on April 19, 1974. The motion for transfer was filed on May 6, 1974. As far as possible application to this case is concerned, the State concedes that *844 we must look to Article 30(c), Tex.Penal Code Ann. (1973), which provided:
A person who has been alleged in a petition for an adjudication hearing to have engaged in delinquent conduct ... may not be prosecuted for or convicted of any offense alleged in the juvenile court petition or any offense within the knowledge of the juvenile court judge as evidenced by anything in the record of the juvenile court proceedings.[2]
It is appellant's contention that the provision in the Penal Code had the effect of depriving the juvenile court of jurisdiction to transfer appellant to district court for trial as an adult, since such Penal Code provision precluded prosecution or conviction of appellant for the offense of murder alleged in the adjudication petition previously filed in juvenile court.
Appellant's contention is without merit. The Penal Code provision on which appellant relies did no more than to make available a plea in the nature of double jeopardy as a defense to a prosecution in criminal court. It does not deprive the juvenile court of jurisdiction to certify appellant for prosecution as an adult. We agree with the conclusion reached in Stockton v. State, 506 S.W.2d 918, 919 (Tex.Civ. App., Waco 1974, no writ), where it was said, "Former jeopardy is an affirmative defense. It must be specially pleaded and proved by the defendant in a criminal prosecution, else it is waived."
Section 54.02(d) requires that the juvenile court, "Prior to the hearing" on the State's motion to transfer, shall order and obtain "a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense."
After the first transfer order had been set aside by this Court, the juvenile judge, on March 18, 1976, ordered "a complete diagnostic study and social evaluation" of appellant. Appellant contends that, since this order did not call for "full investigation of the child, his circumstances, and the circumstances of the alleged offense," there has been no compliance with the requirements of Sec. 54.02(d). We overrule this contention.
When the motion for transfer was originally filed in 1974, the juvenile judge promptly ordered the preparation of all items mentioned in Sec. 54.02(d). Except for the diagnostic study, these reports were made and delivered to the juvenile judge. Nothing in the statute requires a duplication of the reports and investigations which had been made originally. The juvenile judge, had, in fact, "ordered and obtained" the investigation which was not mentioned in the second order.
As a result of the court's order for a complete diagnostic study, Dr. Sherman, county child psychologist, and Dr. Cameron, county psychiatrist, interviewed appellant. After Dr. Sherman had introduced himself to appellant, appellant said, "If this is for the psychological, man, I don't want to do it. My attorney told me not to." Appellant refused to take psychometric tests and refused to answer any questions. As a result, it was impossible for Dr. Sherman to draw any conclusions as to appellant's "present mental status or psychological makeup."
Dr. Cameron reported that appellant told him he would like to cooperate, but that his attorney had instructed him to answer no questions. According to Dr. Cameron, appellant was embarrassed "because he did not and would not answer even the most simple and innocuous questions," other than to give such personal data as his name, age, height, weight, and place of birth. Dr. Sherman testified that he could not "perform a psychological evaluation" if the person to be evaluated refused to cooperate "in *845 regard to having an interview or as to taking any tests."
Based upon his observation of appellant, Dr. Cameron reported that appellant "appeared to be a rather alert, personable individual who was in good contact with his surroundings," who evidenced no "overt neurotic or psychotic symptomatology" and who "is apparently able to cooperate with his attorney because he was following his instructions to the letter." He added that appellant "appears competent and must be presumed so until otherwise established."
In setting aside the first transfer order, we relied on the fact that the juvenile court had not obtained the "complete diagnostic study" required by the statute. But our conclusion to reverse was based on the absence of evidence showing that appellant's refusal to cooperate and submit to interviews precluded the making of such a study. 532 S.W.2d at 648. The record now before us shows that attempts were in fact made to effect a diagnostic study, and that the limited nature of the study was due solely to appellant's refusal to cooperate. Under these circumstances, we conclude that the reports of Dr. Sherman and Dr. Cameron, and particularly the report of Dr. Cameron, constitute as complete and adequate a "diagnostic study" as was possible under the circumstances, and that a bona fide effort was made to comply with the statute. We are not inclined to hold that the statute requires the accomplishment of that which is impossible due to appellant's attitude.
Over appellant's objection, the court admitted into evidence the transcript of the testimony offered at the previous hearing which resulted in the entry of the first transfer order which we set aside. Appellant contends, and we agree, that the admission of such transcript requires reversal.
It is the settled rule in this State that testimony of a witness given at a prior trial of the same case or substantially the same issues, at which prior hearing there was opportunity for cross-examination, may be introduced in evidence at a subsequent trial "where it is shown that the witness is dead, or that he had become insane, or is physically unable to testify, or is beyond the jurisdiction of the court, or that his whereabouts is unknown and that diligent search has been made to ascertain where he is, or that he has been kept away from the trial by the adverse party." Houston Fire & Casualty Insurance Co. v. Brittian, 402 S.W.2d 509, 510 (Tex.1966). The State admits that there is no showing that any of the conditions precedent to the admission of the testimony given at the first hearing existed.
We see no reason why the rule should not be applied in a hearing for the purpose of determining whether a youthful offender is going to be deprived of the protection afforded by the juvenile court system. The transfer proceedings must be characterized as the most critical stage of the juvenile court process. Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). The stakes in a transfer proceeding are exceedingly high. Stamm, Transfer of Jurisdiction in Juvenile Court: An Analysis of the Proceeding, Its Role in the Administration of Justice, and A Proposal for the Reform of Kentucky Law, 62 Ky.L.J. 122, 144 (1973). In view of the gravity of the determination to be made and its dire consequences on the youthful offender, it would be anomalous to relax the rules which govern the admissibility of evidence in other proceedings.
Section 54.02(e) permits the juvenile court at the transfer hearing to consider written reports from probation officers, professional court employees, or professional consultants in addition to the testimony of witnesses. This provision falls short of sanctioning the admission of testimony given at a previous hearing without establishing the required predicate for the admission of such testimony.
We cannot classify the error in admitting the testimony at the prior hearing, embodied in the State's exhibit 2, as other than prejudicial.
Section 54.02(f) requires that, in determining whether to transfer the case to *846 criminal court, the juvenile judge consider (1) whether the offense was against person or property, with greater weight in favor of transfer given to offenses against the person; (2) whether the offense was committed in an aggressive and premeditated manner; (3) whether there is evidence on which a grand jury may be expected to return an indictment; (4) the sophistication and maturity of the child; the record and previous history of the child; and (5) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.
Section 54.02(h) requires that the juvenile court, if it certifies the child to criminal court for trial as an adult, state specifically in the transfer order "its reasons for waiver."
The order in this case recites that the juvenile court considered all of the factors enumerated in Sec. 54.02(f). It contains findings to the effect that (1) the offense was murder, committed against the person of another; (2) the offense was committed in an aggressive and premeditated manner; (3) evidence was presented concerning the alleged offense upon which a grand jury may be expected to return an indictment; (4) the evidence and reports filed demonstrate that there is little likelihood "if [sic] any" prospect of adequate protection of the public and likelihood "or [sic] reasonable" rehabilitation of appellant by use of procedures, services, and facilities currently available to the juvenile court.
The case history submitted by the county probation office contains a statement to the effect that appellant murdered an airman. We assume that this is sufficient to support the finding that the alleged offense was of the grade of felony and was committed against the person of another. Except for State's exhibit 2, there is no evidence whatever to support the finding that the offense was committed in an aggressive and premeditated manner. Aside from the statement contained in the report of the probation officer, there is no evidence that appellant committed the murder. Aside from State's exhibit 2, there is no evidence to support the finding that there is little likelihood that appellant could be rehabilitated by resort to the facilities, services, and procedures presently available to the juvenile court. In fact, the report filed by the probation officer states that appellant has fully cooperated with the representatives of the juvenile office, and the recommendation contained in this report is to the effect that appellant be committed to the Texas Youth Council. That is, the report is diametrically opposed to the finding that appellant could not have been successfully rehabilitated by being treated as a juvenile.
The trial court also found that appellant is of "sufficient sophistication and maturity to have intelligently, knowingly, and voluntarily waived all constitutional and statutory rights heretofore waived" by him "and to have aided in the preparation of this [sic] defense." This finding is somewhat difficult to understand. We believe that the requirement that the juvenile court consider the maturity and sophistication of the child refers to the question of culpability and responsibility for his conduct, and is not restricted to a consideration of whether he can intelligently waive rights and assist in the preparation of his defense. In this connection, the report of the juvenile officer states that it is "doubtful if he understands the seriousness" of his conduct.
It is clear from the record that there is no evidence, aside from State's exhibit 2, concerning a majority of the factors which the statute requires that the juvenile court consider.
Unless we are prepared to hold that the mere fact that appellant is accused of having committed murder justifies transfer, we must conclude that the record affirmatively reflects that the admission and consideration by the juvenile court, of State's exhibit 2 amounted to such a denial of appellant's rights "as was reasonably calculated to cause and probably did cause the rendition of an improper judgment." Tex. R.Civ.P., Rule 434. We are aware of the *847 fact that in In Re Buchanan, 433 S.W.2d 787, 789 (Tex.Civ.App., Fort Worth 1968, writ ref'd, n.r.e.), it was said that the "seriousness of the offense of murder is sufficient to justify the Juvenile Court in determining that the welfare of the community requires criminal proceedings" as provided in the statutory provision concerning transfer. But it should be pointed out that in Buchanan the "evidence introduced at the hearing shows without dispute that appellant shot and killed a man without provocation or cause." 433 S.W.2d at 789. Here there is no admissible evidence to that effect. In any event, the Buchanan opinion obviously focuses on only one of the factors which Sec. 54.02(f) requires to be considered. We find nothing in the statute which suggests that a child may be deprived of the benefits of our juvenile court system merely because the crime with which he is charged is a "serious" crime. Implicit in this conclusion is a rejection of the underlying philosophy of the juvenile court system, since it is based on the assumption that children who commit "serious" crimes cannot be successfully rehabilitated. Only by indulging this presumption can it be concluded that "the welfare of the community requires criminal" prosecution of any child who commits a serious crime. If, despite the gravity of the charged offense, the child can be successfully rehabilitated by resort to the facilities available to juvenile court, it is clear that such rehabilitation will promote the "welfare of the community" at least as effectively as criminal prosecution with no prospects of rehabilitation, while, at the same time, it accords to the child the beneficial results which our Legislature has concluded can be achieved by protecting youthful offenders from the stigma and demoralizing effects of criminal prosecution.
The judgment of the trial court is reversed and the cause is remanded for further proceedings.
NOTES
[1] Unless otherwise indicated, all statutory references are to Tex. Family Code Ann.
[2] Article 30 of the old Penal Code has been replaced by what is now Article 8.07 of the Penal Code. Article 8.07(d) now provides that no person who has been "adjudged a delinquent child" may be convicted of any offense alleged in the petition to have him adjudged delinquent or any offense within the knowledge of the juvenile judge as evidenced by the record of the juvenile proceedings.