256 S.E.2d 894 (1979)
STATE of West Virginia
v.
D. W. C., a juvenile, et al.
No. 14324.
Supreme Court of Appeals of West Virginia.
July 17, 1979.
*895 Garrett, Whittier & Garrett, William C. Garrett and Thomas N. Whittier, Webster Springs, for plaintiff-in-error.
Chauncey H. Browning, Atty. Gen., Michael G. Clagett, Asst. Atty. Gen., Charleston, for defendant-in-error.
MILLER, Justice:
This case presents the narrow issue of the propriety of a transfer from juvenile court to criminal court where the offense charged is murder. The transfer took place during the time the 1977 Juvenile Act was in effect.[1]
The basic question is whether there was "clear and convincing proof" that "there are no reasonable prospects for rehabilitating the child through resources available to the court under this article."[2] We determine that the evidence did not meet the required level of proof, and reverse the transfer order.
The juvenile, D.W.C., was 16 years old and in the company of another juvenile at the time of the commission of the alleged murder. The crime occurred in the home of the victim, an elderly man. D.W.C. had occasionally done chores for the victim and the two had been friendly over a period of time. There were no eyewitnesses to the crime except the two juveniles. The murder weapon was a knife and apparently each juvenile accuses the other of being the perpetrator of the crime.
*896 At the time of the transfer hearing, D.W.C. had been interviewed and tested by a psychiatrist, Dr. Thomas S. Knapp, and a psychologist, Mr. Donald R. Swick. These experts were obtained by the juvenile's attorney, and their testimony was taken by deposition which was introduced by the State in its case-in-chief.
Both the psychiatrist and the psychologist were of the opinion that D.W.C. had no severe psychiatric disorder, but did have a passive personality and an average IQ. Both were also of the view that counseling would be helpful and that there were reasonable prospects for his rehabilitation within the juvenile system.[3]
The State argues that on cross-examination the psychiatrist, Dr. Knapp, changed his position concerning the juvenile's prospects for rehabilitation. This contention is predicated on a question in which Dr. Knapp was asked to assume that D.W.C. had an active rather than passive personality and had been an active participant in the crime. The doctor answered that, based on these assumptions, the prospects for rehabilitation within the juvenile system were not good. However, the doctor specifically qualified his answer by stating that the assumption that the juvenile had an active personality trait was contrary to the test results and diagnosis; that the only way the test results could be wrong would be if the juvenile had manipulated the results; and that this kind of manipulation would require a much higher intelligence than D.W.C. possessed.[4]
The State's case also contained the testimony of personnel of the school attended by *897 D.W.C. Their testimony was that the juvenile had had some disciplinary problems at school, but had not been expelled.[5] The principal of the school thought that the juvenile had had some "mental health counselling," but could not recall the details.
The juvenile's attorney produced testimony from neighbors, relatives and employers which indicated that he appeared to be normal and was a hard worker. They stated he had no violent tendencies and was a somewhat passive individual.
We recognize initially that the 1977 transfer standards for juveniles have been made more explicit and less stringent by the 1978 amendments to our Juvenile Act.[6] Under the 1977 standards, we have stated that transfer "should be the exception and not the rule." State ex rel. Smith v. Scott, W.Va., 238 S.E.2d 223, 226 (1977). Even the 1978 amendments to the juvenile transfer section of the Code do not make a transfer mandatory unless the juvenile is over 16 years of age and demands a transfer under W.Va.Code, 49-5-10(c) (1978).
The present case is somewhat analogous to State v. Bannister, W.Va., 250 S.E.2d 53 (1978), where a 16-year-old juvenile had killed his father. After a considerable lapse of time, during which the juvenile received psychiatric counseling, the juvenile transfer hearing was held. Three psychiatrists stated the child had responded to the psychiatric counseling to the extent that they doubted he would exhibit future violent behavior. A State's psychiatrist differed, stating that another violent episode was a possibility. We concluded that the State had failed to sustain its burden of proving by clear and convincing evidence that there were no reasonable prospects for rehabilitation, holding in Syllabus Point 1:
"Where the findings of fact and conclusions of law justifying an order transferring a juvenile proceeding to the criminal jurisdiction of the circuit court are clearly wrong or against the plain preponderance of the evidence, such findings of fact and conclusions of law must be reversed. W.Va.Code § 49-5-10(a) [1977]."
In State v. Trail, W.Va., 255 S.E.2d 901 (1979), we upheld a transfer from juvenile to criminal court on a murder charge based on our conclusion that the State had met its burden under the 1977 Act. The major emphasis at the transfer hearing was the commission of prior crimes while the defendant was a juvenile and the lack of rehabilitative prospects.
In the present case, the critical evidence was that of the psychiatrist and psychologist, both of whom testified that the juvenile *898 was amenable to rehabilitation in the juvenile system. We do not find the State's argument persuasive. Because the psychiatrist was asked to assume, contrary to his tests and diagnosis, that the juvenile had an active personality and, upon this assumption, to offer an opinion as to his rehabilitative prospects, that opinion was not based on a correct factual premise. We have generally held that hypothetical questions put to experts which are based on incorrect factual assumptions are improper. Barnett v. State Workmen's Compensation Commissioner, 153 W.Va. 796, 172 S.E.2d 698 (1970); Schroeder v. Adkins, 149 W.Va. 400, 141 S.E.2d 352 (1965).
The record before us does not demonstrate by clear and convincing evidence that the child is without reasonable prospects of rehabilitation as required by the 1977 Juvenile Act. W.Va.Code, 49-5-10 (1977). Indeed, it demonstrates the contrary, since the experts indicate he will respond to rehabilitative counseling.
Certainly a primary factor in this case is that the juvenile has no prior juvenile record. One of the most comprehensive and thoughtful articles in the field of juvenile transfer standards is Professor Feld's Reference of Juvenile Offenders for Adult Prosecution: The Legislative Alternative to Asking Unanswerable Questions, 62 Minn.L.Rev. 515 (1979). One of his principal points is that the transfer decision should be keyed to the particular background of the individual. He also suggests that statistics demonstrate the need for giving consideration to the juvenile's prior felony record:
"Thus, regardless of the present offense, a youth must have been previously convicted of an offense that would have been a felony if committed by an adult to warrant adult prosecution. The requirement of a prior serious offense underscores the belief advanced in this Article that only the serious offender who is likely to repeat should properly be excluded from the jurisdiction of the juvenile court." [62 Minn.L.Rev. at 614]
Factors which W.Va.Code, 49-5-10 (1977) identifies as bearing on the rehabilitative decision, and which appear to favor the juvenile in this case, are that his mental and physical condition are not abnormal and that his emotional attitude and family environment do not demonstrate any pattern of hostility on his part. It is true that school officials indicated that on occasion he was hostile to their exercise of disciplinary authority, but at no time did it result in serious disciplinary charges. See, State ex rel. E. D. v. Aldredge, W.Va., 245 S.E.2d 849 (1978).
In State ex rel. Smith v. Scott, supra, we emphasized that age alone is not a sufficient ground for transfer. Both the 1977 and 1978 Juvenile Acts extend juvenile jurisdiction to age 20, where a child 16 years of age or older commits an act which would be a crime if he were an adult. W.Va.Code, 49-5-2. The juvenile in this case meets this statutory requirement.
Other courts which have construed juvenile acts similar to our 1977 Act have held, on facts comparable to those here, that the transfer was not justified under their statutory standards. In re White, 224 Kan. 717, 585 P.2d 1046 (1978); In re Patterson, 210 Kan. 245, 499 P.2d 1131 (1972); In re Mack, 22 Ohio App.2d 201, 51 Ohio Ops.2d 400, 260 N.E.2d 619 (1970); S. H. v. State, 581 P.2d 916 (Okl.Cr.1978); R. E. M. v. State, 541 S.W.2d 841 (Tex.Ct.App.1976).
The juvenile asserts other errors not relating to the transfer order in connection with the 1977 Juvenile Act. We have held, however, in State v. Trail, supra, that where an appeal is taken from a transfer decision in advance of the final adjudication of guilt, we ordinarily will consider only the propriety of the transfer decision.
For the reasons herein stated, the transfer order is reversed and the case is remanded for further proceedings not inconsistent with this opinion.
Reversed and remanded.
NOTES
[1] The relevant standards under the 1977 Act for transfer were in W.Va.Code, 49-5-10(a):

"Upon motion of the prosecuting attorney, the recommendation of the referee or upon its own motion, the court may at the time specified in section nine of this article transfer to a criminal proceeding the case of a child who is alleged to have committed, on or after his sixteenth birthday, an offense which, if committed by an adult, would be a felony if there is clear and convincing proof that: (1) The offense allegedly committed by the child is one of violence or evidences conduct which constitutes a substantial danger to the public; and (2) there are no reasonable prospects for rehabilitating the child through resources available to the court under this article. With reference to such rehabilitation prospects the court shall consider the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and the like. The burden of proof of such determination shall rest on the petitioner."
[2] It is not contested that the charged conduct met the first statutory requirement; that is, it "constitutes a substantial danger to the public."
[3] The pertinent portions of the experts' testimony on this point were:

"Q: Does this juvenile suffer from a type of disorder that would warrant [counseling]?
"A: [Dr. Knapp] Well, it certainly would help him.
. . . . .
"Q: [C]ounselling would help that?
"A: I think so, yes.
. . . . .
"Q: [D]o you know whether or not there are reasonable prospects for rehabilitation of this juvenile?
"A: I should think so."
Dr. Knapp continued:
"Q: Doctor, assumingor based upon your examination of this individual, and assuming that he was, in fact, a passive participant, as it appears from this examination, what types of programs do you feel would be necessary to rehabilitate this juvenile in this society, so that he would not even be a passive participant in such a crime in the future?
"A: Well, I think if you're speaking of this State and what we have, I think that the best course of action would be to refer him to vocational rehabilitation. And under vocational rehabilitation, the department would pay for the counselling that he needs; would also pay for the training for a skill or a vocation. He could be transferred to our vocational center, which is one of the best in the country. I will say that this is one thing we have, when it comes to rehabilitation of both physically and mentally disabled. We have one of the best centers in the country. That transferring him to a center where there would be much more of a structured sort of environment, where he could receive not only group counselling, milieu therapy, and also individual psychotherapy by the consultants. And I am one of the consultants down there. That would be the ideal, I think, course of action to take in this case."
Mr. Swick testified:
"Q: Do you feel that there are facilities to rehabilitate this juvenile within the juvenile court system of West Virginia?
"A: I think the juvenile court system in West Virginia can provide the necessary structuring environments and rehabilitative personnel, yes.
"Q: That's on your assumption that he was a passive participant in the alleged crime?
"A: Yes.
"Q: And do you feel that the juvenile court system could rehabilitate this individual if he were an active participant in the alleged crime?
"A: Yes."
[4] Dr. Knapp's testimony was:

"Q: [A]ssuming . . . that he was . . . an active participant in such a crime, do you have an opinion as to whether or not there are any programs in the juvenile court system in West Virginia in which he could be rehabilitated?
"A: Well, I would have to say no to that, knowing the treatment facilities in this State are practically nonexistent for anybody. . . But you're making an assumption that this individual is escaping by manipulation or what have you, the results of our tests and our conclusions, which could only be observed in someone of much higher intelligence; someone who is, what we call, has paranoia, which is indeed a rare disease. And I've only seen three or four of them in my thirty years of practice. And, so, what you're assuming is a rarity."
[5] The record discloses that the juvenile's mother had requested that the local board of education permit her son to terminate his school attendance prior to his sixteenth birthday so that he could help with farm chores, and that this request was granted.
[6] W.Va.Code, 49-5-10(d) (1978), states:

"The court may, upon consideration of the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors, transfer a juvenile proceeding to criminal jurisdiction if there is a probable cause to believe that:
"(1) The child has committed the crime of treason . . .; the crime of murder . . .; the crime of robbery involving the use or presenting of firearms or other deadly weapons. . .; the crime of kidnapping . . .; the crime of first degree arson . . .; or charging sexual assault in the first degree. . ., and in such case, the existence of such probable cause shall be sufficient grounds for transfer without further inquiry; or
"(2) A child has committed an offense of violence to the person which would be felony if the child were an adult: Provided, that the child has been previously adjudged delinquent for the commission of an offense which would be a violent felony if the child were an adult; or
"(3) A child has committed an offense which would be a felony if the child were an adult: Provided, that the child has been twice previously adjudged delinquent for the commission of an offense which would be a felony if the child were an adult; or
"(4) A child, sixteen years of age or over, has committed an offense of violence to the person which would be a felony if committed by an adult; or
"(5) A child, sixteen years of age or over, has committed an offense which would be a felony if committed by an adult: Provided, that such child has been previously adjudged delinquent for an offense which would be a felony if the child were an adult."