674 P.2d 841

**In the Matter of the APPEAL IN MARICOPA COUNTY, JUVENILE ACTION NO. J–94518.**

**No. 17047–PR.**

Supreme Court of Arizona, En Banc.

Dec. 2, 1983.

Ross P. Lee, Maricopa County Public Defender by Janice M. Marquez and Dennis Freeman, Deputy Public Defenders, Phoenix, for appellant.

Thomas E. Collins, Maricopa County Atty. by Barbara K. Miller, Asst. County Atty., Phoenix, for appellee.

HAYS, Justice.

Petitioner's case was transferred from the juvenile court to the superior court for prosecution of petitioner as an adult. Arizona Rules of Procedure for Juvenile Court, rule 14(b), provides the criteria by which a juvenile's case may be transferred:

> The court may transfer the action for criminal prosecution to the appropriate court having jurisdiction of the offense if the court finds probable cause [that the juvenile committed the alleged offenses] and reasonable grounds to believe that:
>
> (1) The child is not amenable to treatment or rehabilitation as a delinquent child through available facilities; and
>
> (2) The child is not commitable [sic] to an institution for mentally deficient, mentally defective or mentally ill persons; and
>
> (3) The safety or interest of the public requires that the child be transferred for criminal prosecution.

Two issues confront us: 1) whether there was probable cause to support one of the charges against petitioner, and 2) whether the juvenile court abused its discretion in finding that the juvenile was not amenable to treatment or rehabilitation through available facilities, and that the public interest required the transfer for prosecution of the juvenile as an adult. We affirm the trial court's order of transfer. The memorandum decision of the court of appeals is vacated.

A quick review of the juvenile's history is necessary to a resolution of the issues. The juvenile first came to the attention of

juvenile authorities at age ten when he was caught burglarizing a home. The juvenile was counseled and warned on the offense. Shortly thereafter the juvenile was found trespassing in a vacant apartment. Again, the juvenile was counseled and warned. At age thirteen the juvenile entered a fenced construction site, broke into a trailer at the site and took some keys, then used one of the keys to start a truck at the site, and proceeded to drive the truck through two gates and come to a stop upon hitting a cement Salt River Project canal culvert. The juvenile was counseled and warned. At age fourteen the juvenile was caught shoplifting. For this act he was put on probation. At age fifteen he was again caught shoplifting. This time he was placed on probation with the added requirement that he complete thirty hours of volunteer work.

The acts that led to the present case began shortly after the juvenile's sixteenth birthday. Acts on four separate occasions led to charges filed by the state in four separate petitions, each followed by a request for a transfer hearing.

On August 21, 1982 the juvenile was allegedly involved in a high-speed chase, during which he drove into a Volkswagen parked in a driveway, backed into the pursuing police car, drove through a yard, proceeded back into the street, ran through another yard, struck another parked vehicle in a driveway, proceeded to an alley striking a block fence, struck another block fence, went through a yard, drove into a house barely missing a child sleeping inside, backed out of the house and across the yard, backed into a neighbor's block fence, made a U-turn, drove at the officer who had exited his patrol unit, missed the officer as he drove through another block wall, struck a gazebo and high-centered the car on a diving board. The state did not immediately file a petition regarding these acts. Rather, the state filed a petition only after two subsequent acts by the juvenile in October, 1982. After the October occurrences, the state on December 2, 1982 filed a petition concerning the August incident. In this petition the state alleged six counts of

criminal damage, one count of aggravated assault, one count of endangerment, and one count of felony flight.

The second incident that led to a petition by the state occurred on October 20, 1982. The juvenile was caught allegedly trying to steal a pickup truck. As with the August 21 occurrence, the state did not file a petition until December 2, after another act by the juvenile. The pickup truck incident resulted in a December 2, 1982 petition in which the state alleged one count of attempted theft, one count of curfew violation, and two counts of probation violation.

The third occurrence leading to a petition was discovered October 24, 1982. A mobile home had been broken into, and a shotgun and first-aid kit were taken. A short time after the discovery of the break-in, the juvenile was caught trespassing on private property; the shotgun was found either in the juvenile's possession or a short distance from the juvenile. The mobile home break-in resulted in a December 9 petition in which the state alleged two counts of burglary, theft, and probation violation.

After being caught trespassing in Chandler the juvenile apparently was confined until November 24, 1982. On that date he was released and put on home detention. Barely two weeks later, on December 7, the juvenile committed acts resulting in the fourth petition. The juvenile took a car parked in the Mesa High School lot. The car was later spotted in Flagstaff weaving all over the road. The juvenile failed to respond to an officer's attempt to make him stop the car, and sideswiped another vehicle. Additional officers then assisted in stopping the car and caught the juvenile. In the fourth petition at issue in the transfer hearing the state alleged theft and probation violation.

In addition to the acts leading to the four petitions at issue in the transfer hearing, the state filed two other petitions. The first, dated September 10, 1982, involved the theft of an automobile. Apparently the juvenile stole the car used in the August 21 high-speed chase. The second, dated Octo-

ber 25, 1982, arose from the trespassing in Chandler. The state dismissed the October 25th petition in exchange for an admission of the theft charge in the September 10 petition. The latter petition was pending disposition at the time the transfer hearing at issue in the present case was held.

■ At the transfer hearing the juvenile waived a showing of probable cause on all the allegations in the four petitions, except one of the criminal damage counts, and contested only that charge and the issue of whether the juvenile's case should be transferred. In the criminal damage count contested by the juvenile, the state alleged that during the August 21, 1982 incident the juvenile damaged the block fence and residential yard of a Mr. and Mrs. Kozin. Rule 14 of the Arizona Rules of Procedure for Juvenile Court requires a juvenile court in a transfer hearing to find probable cause that the juvenile committed the offenses alleged before addressing the three criteria enumerated in that rule. *In re Maricopa County, Juvenile Action,* 138 Ariz. 282, 674 P.2d 836 (1983). In the present case, the officer who pursued the juvenile during the August 21, 1982 incident testified at the transfer hearing that he personally saw the juvenile damage the Kozins' fence and yard. That testimony was uncontroverted. The evidence was sufficient to support a finding of probable cause.

■ When a court transfers a juvenile's case to adult court, due process requires the court to state its reasons for the transfer. *Kent v. United States,* 383 U.S. 541, 560, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84 (1966). Beyond that, however, the decision whether to transfer is within the discretion of the juvenile court, Ariz. Const. art. 6, § 15, and will not be overturned absent a clear abuse of that discretion. *See McBeth v. Rose,* 111 Ariz. 399, 402, 531 P.2d 156, 159 (1975). The court is accorded discretion because it is the only unbiased party in a position to observe the proceeding and the demeanor of the witnesses and litigants. *See State v. Schmid,* 107 Ariz. 191, 193, 484 P.2d 187, 189 (1971).

In the present case the transferring judge concluded the length of time the juvenile could be subject to juvenile court jurisdiction was not sufficient to effect rehabilitation. The jurisdiction of the juvenile court and the power of the Department of Corrections under a juvenile commitment terminates upon a person's eighteeth birthday. *In re Appeal, in Maricopa Juvenile No. J–86509,* 124 Ariz. 377, 379, 604 P.2d 641, 643 (1979), *cert. denied,* 445 U.S. 967, 100 S.Ct. 1660, 64 L.Ed.2d 245 (1980). At the time of the transfer decision the juvenile was 16½ years, thus providing the juvenile court with jurisdiction for 1½ years.

In attacking the holding that the juvenile was not amenable to treatment or rehabilitation through available facilities, the juvenile stresses that the state did not present any witnesses, instead relying on the minor's "social file." A social file contains, *inter alia,* a history of the minor's offenses, reports by probation officers and psychologists, and corrective action taken for each offense. The juvenile presented one witness: the staff psychologist who examined the juvenile and wrote a transfer report. That psychologist, in his testimony, and the minor's probation officer, in her report contained in the social file, both recommended against transfer.

■ The court should consider and be receptive to the recommendations of experts in the field of behavioral sciences. *In re Maricopa County, Juvenile Action No. J–72804,* 18 Ariz.App. 560, 563, 504 P.2d 501, 504 (1973). The court is not, however, bound by these recommendations. *In re Appeal in Pima County Juvenile Action No. 53358–6,* 126 Ariz. 417, 418, 616 P.2d 92, 93 (App.1980). The court should also properly consider the juvenile's past and his amenability to the juvenile process as the record discloses.

In the instant case the judge discussed the recommendations of the psychologist and the probation officer. It is noteworthy that even the psychologist estimated only a fair prognosis, and this estimation assumed

the juvenile would receive all the necessary treatment during juvenile confinement.

With regard to consideration of the juvenile's past and his amenability to treatment as the record discloses, we first note that the seriousness of the offense is not alone dispositive of the case. *Id.* at 418, 616 P.2d at 93 (Richmond, J., dissenting). In this case the judge stated he did not base his decision solely on the gravity of the offenses alleged or the damage involved. Rather, the judge reviewed the juvenile's file, revealing numerous crimes, a long exposure to the juvenile system without favorable response, and an increasing seriousness and frequency of the offenses. The judge observed that the juvenile was on probation at the time of the current offenses, that the juvenile was awaiting disposition on a car theft at the time of the transfer hearing, and that while released from detention and after the first two petitions had been filed, the minor stole a car and fled to Flagstaff. The judge concluded from these facts that the period the juvenile would be subject to the juvenile court's jurisdiction, 1½ years, was not long enough to effect rehabilitation.

We find no abuse of discretion in the court's decision. The transcript and the minute entry containing the transfer decision reveal that the judge carefully considered the evidence before him. It is clear he did not react hastily. Given the limited period of juvenile court jurisdiction and considering the limited facilities available to juvenile authorities, it was not an abuse for the court to conclude that meaningful results could not be accomplished.

Finally, the minor claims it was error to conclude that the public safety or interest required the transfer. The danger to the public is especially apparent in the August 21, 1982 incident: at one point the juvenile drove his car straight toward a police officer. In addition, two of the psychologists' conclusions were noted by the transferring judge: the juvenile's problems stem from his mother's leaving the family when he was very young, and those prob-

lems are exacerbated by the present family situation. Thus, it is unlikely the minor will receive the necessary rehabilitation at home upon release from juvenile facilities. We find no abuse from the conclusion that public safety or interest required the transfer.

Order of Transfer affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.