690 P.2d 816

**In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. J–96430.**

**No. 1 CA–JUV 201.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 18, 1984.

Thomas E. Collins, Maricopa County Atty. by James D. DeVaney, and James S. Tegart, Deputy County Attys., Juvenile Div., Phoenix, for State.

Gene R. Stratford, Scottsdale, for juvenile.

## OPINION

GREER, Judge.

The issue in this case is whether the juvenile court erred in granting the state's motion to transfer the juvenile to adult court for prosecution. We find that the court did not err in its determination and affirm the order.

During the late evening of August 15, 1982, the juvenile and several others were involved in a gang fight in South Phoenix. After the juvenile was struck in the face by a rock or bottle, he and a companion drove to a point several blocks from the scene, where they attended to his injuries. At that time, the juvenile was very angry and stated to others that he wanted to "return and kill somebody."

The car returned to the area and proceeded slowly past, while the juvenile, holding a gun with both hands, fired into the vacant lot. One bullet struck Mario Rivera in the chest and he died enroute to a hospital. Both the juvenile and the driver of the car were arrested several hours later.

On August 18, 1982, a petition was filed, alleging the juvenile to be a delinquent child by reason of a charge of first degree murder. A transfer hearing was also requested at that time. On August 19 an advisory hearing was conducted, and the court, having found probable cause to believe that the juvenile committed the crime charged, ordered the transfer hearing held. After extended hearings, the court, by minute entry, on January 7, 1983, granted the request to transfer.

The juvenile first contends that the court erred in finding that probable cause existed to believe he committed the crime charged. Specifically, he contends that no evidence exists by which the court could find that he acted with premeditation. Further, he argues that the court ignored evidence of adequate provocation when it found probable cause.

■ Pursuant to Rule 14(a), Arizona Rules of Procedure for the Juvenile Courts, the trial court must make a finding of probable cause prior to ordering transfer to superior court.[1] To arrive at a conclusion

---

1. Rule 14 requires the juvenile court to make certain findings before ordering transfer. The rule, as it existed at the time of the proceedings at issue, reads:

   TRANSFER HEARING; ORDER
   (a) The transfer hearing shall include evidence of the offense alleged, unless waived, and of the transfer investigation report. At the conclusion of the transfer hearing, the court shall determine whether an offense has been committed and that probable cause exists to believe that the child committed the offense alleged. If the court finds such probable cause or evidence of probable cause has been waived, upon its own motion or the motion of any interested party, it may order, in addition to the transfer investigation, an investigation including a mental and physical examination of the child, to be made by a public or private agency, or by a person qualified to make such examinations.
   (b) The court may transfer the action for criminal prosecution to the appropriate court having jurisdiction of the offense if the court finds probable cause and reasonable grounds to believe that:

of probable cause, there must be more evidence for, rather than against guilt, and there must exist such a state of facts to lead a man of ordinary caution to conscientiously entertain a strong suspicion of guilt. *In Re Anonymous,* 14 Ariz.App. 466, 484 P.2d 235 (1971).

■ A.R.S. § 13–1101(1) defines premeditation as

[acting] with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by a length of time to permit reflection.

In this case, the evidence reflects that the juvenile stated he intended to "go back and kill somebody"; that several minutes elapsed between the initial confrontation and the shooting, and that the gun was held and fired in a careful, deliberate manner. We find the evidence supports a finding of premeditation.

■ To determine whether sufficient provocation existed to negate the charge, an objective standard must be applied; i.e. "[T]his heat of passion must be such a passion as would be naturally aroused in the mind of an ordinarily reasonable person under the given facts and circumstances ..." [citations omitted]. *State v. Marvin,* 124 Ariz. 555, 559, 606 P.2d 406, 410 (1980). We do not believe that the trial judge erred in finding that these facts did not constitute sufficient provocation to negate the crime charged.

■ The juvenile next argues that the court erred in finding that he was not amenable to treatment or rehabilitation as a child. Under Rule 14(b), Arizona Rules

of Procedure for the Juvenile Court, the court may order transfer if it finds probable cause and reasonable grounds to believe that: "the child is not amenable to treatment or rehabilitation as a delinquent child through available facilities ..." In reviewing a determination of transfer, the standard of review is whether the juvenile court abused its discretion. Absent an abuse of discretion, a finding will not be disturbed. *In Re Pima County Juvenile Action No. J–218–1,* 22 Ariz.App. 327, 527 P.2d 104 (1974).

During the transfer portion of the proceedings, expert medical testimony was presented by three individuals; Aaron Canter, Ph.D., Otto Bendheim, M.D., and Gregory Young, Ph.D. Dr. Bendheim found the juvenile to be treatable within juvenile facilities, while Dr. Canter felt the juvenile to be a "fair candidate for intervention." Dr. Young, however, was of the opinion that the juvenile was not treatable under existing juvenile facilities and therefore felt that transfer would be recommended. It is the testimony of Dr. Young that is challenged by the juvenile.[2]

In the opinion of Dr. Young, the juvenile suffers from an under-socialized aggressive conduct disorder. That diagnosis was apparently based on an evaluation of the juvenile and an application of the results to criteria set forth in the Diagnostic and Statistical Manual of Mental Disorders, 3d Ed. (DSM–III). The criteria set forth in the manual for a diagnosis of under-socialized aggressive conduct disorder include, *inter alia,* "a repetitive and persistent pattern of aggressive conduct in which the basic rights of others are violated ..., failure to

(1) The child is not amenable to treatment or rehabilitation as a delinquent child through available facilities; and
(2) The child is not commitable to an institution for mentally deficient, mentally defective or mentally ill persons; and
(3) The safety or interest of the public requires that the child be transferred for criminal prosecution.
(c) Upon such transfer the juvenile court shall state the reasons therefor by minute entry or written order and the child shall thereupon be transferred to the custody of an appropriate law enforcement officer, released

on bail, if the offense is bailable, or released upon his own recognizance.
(d) If the action is not transferred, the judge shall proceed to hear and dispose of the action or assign the hearing to another judge, court commissioner or referee.

2. Of course, if Dr. Young's evaluation is not in error, there is merely a discrepancy in the evidence presented and this court will not substitute its judgment for that of the trial court in resolving a conflict in evidence. *Rossi v. Stewart,* 90 Ariz. 207, 367 P.2d 242 (1961).

establish a normal degree of affection, empathy, or bond with others ... and duration of pattern of aggressive conduct of at least six months." The manual also includes a list of behavioral manifestations of this disorder, all of which are physical in nature. It is the contention of the juvenile that Dr. Young's diagnosis does not fit the diagnostic criteria of the DSM–III, and therefore, that no competent evidence exists to indicate that the juvenile is not, in fact, amenable to treatment or rehabilitation.

Dr. Young's testimony, however, discloses that his diagnosis was based upon a definition of "conduct" that included both psychic and physical activity.[3] Applying that definition, Dr. Young found the juvenile to have a mind set which indicated potential manifestations of the criteria set forth in DSM–III. Further, Dr. Young testified that, based upon his tests, his familiarity with existing juvenile facilities in Arizona, and the age of the juvenile, the juvenile was not amenable to treatment and rehabilitation under existing facilities and should therefore be transferred.

In his order, the trial judge noted the testimony, stating "Dr. Young feels that the youth suffers from a severe conduct disorder which requires long term therapy which would extend long beyond his eighteenth birthday and is probably not available in any event to the juvenile justice system in this state." The court further found:

The prospects for adequate protection of the public and the reasonable likelihood of rehabilitation of the juvenile based on:
a. His age;
b. The gravity of the offense;
c. By the use of procedures, services and facilities currently available to the juvenile court are nil.

3. The DSM–III does not appear to define "conduct." It was Dr. Young's opinion that the DSM–III relies upon the American Psychiatric Dictionary as a source manual, and no evidence contradicting that opinion was introduced. The

It is our opinion that sufficient evidence was presented by which the trial court could find the juvenile not amenable to treatment or rehabilitation as a child. There is conflicting evidence on this issue, and the trial court is to be given wide discretion in resolving the conflict in testimony. *Carrasco v. Carrasco,* 4 Ariz.App. 580, 422 P.2d 411 (1967). This finding is therefore also affirmed.

The final issue raised by the juvenile is that the trial court erred in finding that the safety or interest of the public requires that the child be transferred for criminal prosecution. Rule 14(b), *supra.*

In his order of January 7, 1983, the trial judge made, *inter alia,* the following findings:

This matter having been under advisement, the court finds the following in accordance with *Kent v. U.S.,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966):
1. The seriousness of the alleged offense to the community; first degree murder.
2. The alleged offense was committed in an aggressive, violent and premeditated manner.
3. The alleged offense was against person.
4. The prosecutive merit of the complaint is such that a grand jury would be expected to return an indictment and a magistrate find probable cause.
5. Desirability of trial and disposition of the entire offense in one court when the juvenile's associates are adults; the co-defendant is a juvenile also awaiting transfer.
6. The juvenile will be eighteen on September 22, 1983 and, consequently, will not be subject to the juvenile justice system subsequent to that date [citations omitted].

American Psychiatric Dictionary defines conduct as "... psychic as well as somatic activity." American Psychiatric Dictionary, Oxford University Press, 5th Ed. (1981).

... it is clear to the court that it is in the interest of the public that this juvenile be transferred to adult court. It would not be an appropriate message to the gang subculture of this community or the public at large that an individual can commit murder of whatever degree and skate through in a little more than a year. Candidly, the court doubts that the safety of the public requires transfer due to the fact that he doubts that this youth would ever be involved in a matter of such gravity or close to it again.

The juvenile contends, in essence, that the trial judge's finding that the "interest of the public requires transfer" was based entirely upon the seriousness of the offense, and submits that this rationale is not an appropriate basis for such consideration.

■■■■■ Generally, transfer decisions should be keyed not to the crime, but to the individual. *In the Matter of the Appeal in Pima County, Juvenile Action No. 533586*, 126 Ariz. 417, 616 P.2d 92 (App. 1980) (Richmond, J., dissenting); *State v. D.W.C.*, 163 W.Va. 494, 256 S.E.2d 894 (1979); *In Re Patterson*, 210 Kan. 245, 499 P.2d 1131 (1972). Due process requires that a transfer decision be based upon articulated reasons. *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).[4] With regard to the articulated reasons, it is clear that the seriousness of an offense may not in itself be dispositive of the case. *In the Matter of the Appeal in Maricopa County, Juvenile Action No. J-94518*, 138 Ariz. 287, 674 P.2d 841 (1983).

■■■■■ In the present case, however, the seriousness of the offense is not the sole articulated reason for ordering the transfer. As discussed above, the court was presented medical testimony that indicated the juvenile to have a serious conduct disor-

der. The judge also considered the age of the juvenile, and the desirability of disposition of the entire matter in a single court.

This case is dissimilar to other cases cited by the juvenile on this issue. In *State v. D.W.C.*, 163 W.Va. 494, 256 S.E.2d 894 (1979), for instance, where the West Virginia Supreme Court of Appeals reversed a juvenile court transfer decision, all medical testimony favored rehabilitation. In essense, the seriousness of the offense was the sole reason for transfer. In *R.E.M. v. State*, 541 S.W.2d 841 (1976), the Texas Court of Civil Appeals also reversed a transfer order, holding that improperly admitted evidence, and a general lack of evidence of probable cause required reversal. The court did, however, distinguish its holding from the case of *In Re Buchanan*, 433 S.W.2d 787 (1968), in which the same court held that the seriousness of the offense of murder alone is sufficient to justify a finding that the welfare of the community requires transfer.

A situation similar to *R.E.M.* was presented in *In the Interest of White*, 224 Kan. 717, 585 P.2d 1046 (1978). In that case, the sole evidence presented to the juvenile court was the petition for transfer setting forth the state's allegations. The Kansas Supreme Court held that the petition alone was insufficient evidence by which to order transfer, and reversed the decision.

Finally, in *In Re Johnson*, 17 Md.App. 705, 304 A.2d 859 (1973), where the Maryland Court of Special Appeals reversed a transfer order, the court found that the trial judge had been unduly influenced by the gravity of the crime charged. In that case, however, the court found that the juvenile had exhibited extreme remorse following the incident. Furthermore, the court noted that there was little evidence to

---

**4.** Under the present Rule 14, Arizona Rules of Procedure for the Juvenile Court, the juvenile court is required to consider eight factors that are closely tailored to the considerations set forth in *Kent.* The present rule, however, does

not apply to cases in which the juvenile was arrested prior to March 1, 1984. This case, therefore, is decided under Rule 14 as it existed prior to the recent amendment.

support the findings made by the juvenile court.

In each of the cases discussed above, the courts noted that the seriousness of the offense was not dispositive of the transfer decision. Unlike the present case, however, there was in each situation, a lack of additional evidence by which to support the transfer order. We do not find these cases applicable to the case at bar.

In conclusion, we find sufficient evidence by which the trial judge could find that the interest of the public required transfer of the juvenile to adult court.

Accordingly, the order is affirmed.

KLEINSCHMIDT, P.J., and FROEB, J., concur.