705 P.2d 478

### APPEAL IN JUVENILE ACTION J–96695.

### No. 1 CA–JUV 273.

Court of Appeals of Arizona, Division 1, Department C.

May 21, 1985.

Review Denied Aug. 20, 1985.

**240**

Ross P. Lee, Maricopa County Public Defender by Bedford Douglass, Deputy Public Defender, Phoenix, for appellant.

Thomas E. Collins, Maricopa County Atty. by Warren Smoot, Deputy County Atty., Phoenix, for appellee.

## OPINION

BROOKS, Judge.

Five issues are presented in this appeal from an order of the juvenile court which transferred appellant for adult prosecution on three counts of first degree murder and three counts of armed robbery.

1. Whether the juvenile court has jurisdiction to transfer a juvenile to adult court in the absence of a legislative standard for transfer as required by Art. 6, § 15 of the Arizona Constitution.

2. Whether the juvenile court erred in denying appellant's motion to close the transfer hearing to the public.

3. Whether the juvenile court erred in denying appellant's request for a voluntariness hearing and in failing to make a voluntariness determination.

4. Whether the juvenile court erred in finding probable cause to believe that appellant had committed three counts of first degree murder and three counts of armed robbery.

5. Whether the juvenile court applied the correct standard in transferring appellant for adult prosecution, and whether the findings and order are supported by the evidence.

For the following reasons, we affirm the order of the juvenile court.

## FACTS

Considered in the light most favorable to sustaining the order of the juvenile court, the facts are as follows:

During the early morning hours of April 30, 1984, appellant, age 14 years and 11 months, was at home with his adoptive parents and adoptive 17-year-old sister. At approximately 3:00 a.m., appellant removed a small caliber rifle from the sewing room and walked to the opposite end of the residence where he obtained ammunition and loaded the rifle. He then entered his par-

ents' bedroom and shot both of them to death at close range while they slept. He entered his sister's bedroom and shot her to death from close range as she sat up in bed. He then dragged his sister's body from the house to an adjacent storage shed. Shortly after killing his parents and sister, appellant went through their wallets looking for money, finding only two dollars which was in his sister's purse. He then took jewelry, coins and guns from the house and sold some of the guns at a shopping center the same day. Later that day, appellant and a companion went to his father's place of business where appellant took money from a cash box and forged several business checks. On the following day, appellant and his companion were taken into custody at a convenience market where they were attempting to cash one of the forged checks.

A petition was thereafter filed in juvenile court accusing appellant of having committed three counts of first degree murder, either with premeditation or, in the alternative, in the course of and in furtherance of the commission of the crime of armed robbery, and three counts of armed robbery. The county attorney then filed a motion requesting that the juvenile court waive jurisdiction and order the transfer of appellant to the appropriate court for criminal prosecution pursuant to Rule 12, Rules of Procedure for the Juvenile Court. A bifurcated transfer hearing was thereafter conducted pursuant to Juvenile Rule 14.[1] Following the first phase of the hearing, the juvenile court found that there was proba-

ble cause to believe that appellant had committed the offenses as alleged. After hearing and considering the evidence relevant to whether appellant should be transferred for adult prosecution, the juvenile court entered a transfer order which included thirteen pages of detailed findings.

## JURISDICTION

■ Appellant first argues that the juvenile court did not have jurisdiction to transfer him to adult court because the legislature has not provided a standard for transfer as required by Art. 6, § 15 of the Arizona Constitution. Art. 6, § 15 provides as follows:

The superior court shall have exclusive original jurisdiction in all proceedings and matters affecting dependent, neglected, incorrigible or delinquent children, or children accused of crime, under the age of eighteen years. The judges shall hold examinations in chambers for all such children concerning whom proceedings are brought, in advance of any criminal prosecution of such children, and may, in their discretion, suspend criminal prosecution of such children. *The powers of the judges to control such children shall be as provided by law.* (Emphasis added.)

Appellant concedes that our Supreme Court has established a transfer standard through Juvenile Rule 14 but argues that the power of the juvenile court to make a particular disposition of a delinquent child

---

1. Juvenile Rule 14 in pertinent part provides:

(a) The transfer hearing shall be conducted in two phases: first, the determination of probable cause and second, the determination of transfer. The two phases may be heard consecutively on the same date or may be heard on separate dates, in the discretion of the court. The child may waive an evidentiary hearing on either phase of the transfer hearing.

(b) The probable cause phase of the hearing shall be conducted in accordance with Rules 5.3 and 5.4(c), Arizona Rules of Criminal Procedure. Objections to evidence on the ground that it was acquired by unlawful means shall be inapplicable in the probable cause hearing. The court shall find whether there is probable

cause to believe that the offense has been committed and that the child committed it. If the court finds that probable cause does not exist, the court shall dismiss the matter.

(c) If the court determines that there is probable cause to believe that the offense has been committed and that the child committed it, the court shall then determine whether the public safety or interest would best be served by the transfer of the child for criminal prosecution.

Subsection (c) lists various factors which the juvenile court shall consider in its determination of whether to waive jurisdiction and remand to adult court. The factors are footnoted in this opinion where pertinent to the legal analysis.

is limited in that it must be expressly granted by *legislative* act. He cites *Appeal in Juvenile Action J–74275*, 117 Ariz. 317, 572 P.2d 451 (App.1977), and concludes that a transfer standard is not a procedural rule but rather a substantive rule of law.

*Appeal in Juvenile Action J–74275* involved an order which committed the juvenile to the State Department of Corrections, but then suspended the commitment and continued the juvenile on probation. We held that the disposition was beyond the court's statutory authority. The case at hand does not involve the disposition of a delinquent child in juvenile court. There has never been an adjudication of delinquency as appellant's guilt or innocence has yet to be determined. To the contrary, this case involves the decision of the juvenile court to *waive* its jurisdiction in order that criminal prosecution may proceed. This discretionary power of the juvenile court is specifically provided for in Art. 6, § 15 of the Arizona Constitution. *See Vigileos v. State*, 84 Ariz. 404, 330 P.2d 116 (1958), *State v. Jiminez*, 109 Ariz. 305, 509 P.2d 198 (1973).

■ We find that Juvenile Rule 14 is procedural in nature and is fully authorized by Art. 6, § 5(5) of the Arizona Constitution which gives our Supreme Court "[p]ower to make rules relative to all procedural matters in any court."

## FAILURE TO CONDUCT A CLOSED HEARING

Appellant next argues that the juvenile court erred in denying his motion to close the transfer hearing to the public. He acknowledges that Juvenile Rule 19 appears to leave the matter of closure within the sound discretion of the juvenile court [2], but argues that such an interpretation of the rule is contrary to Art. 6, § 15 of the Arizona Constitution which mandates that all juvenile proceedings be conducted "in chambers."

In response to appellant's motion for closure of the proceedings, the juvenile court ruled as follows:

THE COURT FINDS that the juvenile's "interests" or "rights" have not been sufficiently identified to permit the Court to determine whether they are overriding interests, whether they will be prejudiced and whether a closure could be narrowly tailored to protect that interest. In addition, the Court has not been offered, and therefore, has been unable to consider reasonable alternatives to closing the proceedings.

IT IS ORDERED denying the juvenile's Motion for Closure of the Courtroom to the General Public without prejudice to counsel for the juvenile reurging the issue at a later time in a formal written motion.

LET THE RECORD REFLECT that although at this point in time the general public is not excluded, seating in the courtroom is very limited (16 seats) and admission to the transfer hearing will be decided on a priority basis. Preference to seating will be given in the following order: 1. Witnesses not excluded from the courtroom; 2. The relatives of the juvenile and victims; 3. Persons who can establish a direct interest in the above matter; 4. Representatives of the news media; and 5. The general public. The Court will make a determination as to seating at the time of the Transfer Hearing.

In a subsequent minute entry, the juvenile court noted that specific testimony, when properly identified, might require the public's exclusion from the transfer proceedings and it ultimately excluded the public during the testimony of Dr. Yates, a psychiatrist.

■ We find that it is unnecessary to reach the issue as to the constitutionality of Juvenile Rule 19. The parties appear to concede that the purpose of a closed hear-

---

**2.** Juvenile Rule 19 provides, in relevant part, as follows:

In any hearing pursuant to these rules, the general public *may* be excluded and only such persons admitted as have a direct interest in the case. (Emphasis added.)

ing in juvenile court is to promote the juvenile's rehabilitation and to foster his successful reassimilation back into the community by maintaining his anonymity during the juvenile proceedings. This purpose vanishes once the juvenile court waives its jurisdiction and transfers the juvenile to adult court. Whether or not it was proper to open the hearing in the instant case, it would be meaningless to remand this matter back to the juvenile court solely in order that a closed hearing might be conducted. It is not argued, nor does it appear from the record, that the juvenile court's failure to close the hearing in any way impeded the testimony of the witnesses or otherwise resulted in any prejudice which substantively affected the transfer proceedings.[3]

## ADMISSION OF APPELLANT'S STATEMENT AND DENIAL OF HIS REQUEST FOR A VOLUNTARINESS HEARING

■ Appellant made incriminating statements to police officers shortly after the alleged crimes and prior to his being charged in juvenile court. The juvenile court denied appellant's request for a voluntariness hearing relative to the transfer proceedings initiated by the state. In that regard, the juvenile court concluded as follows:

THE COURT FINDS that the juvenile's objection to the evidence is inapplicable to the probable cause determination pursuant to Rule 14(b) as amended and that Rule 18 applies only to evidence offered in a hearing to prove the ultimate issue of guilt or innocence at a final hearing in the matter.

IT IS THEREFORE ORDERED denying the juvenile's Motion for Voluntariness Hearing. The Court will not make any separate or specific determination of the voluntariness or involuntariness of statements made by the juvenile which may be offered in evidence to prove the

issue of probable cause. However, evidence of the circumstances surrounding any statements made may be elicited from the witnesses and evidence of the involuntariness of the statements may be argued on the issue of probable cause.

Appellant first contends that the juvenile court's refusal to conduct a hearing on the voluntariness of the statements denied him a basic procedural right in violation of the due process clause of the Fourteenth Amendment to the United States Constitution and Art. 2, § 4 of the Arizona Constitution. He cites the following rule set forth in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964):

It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession.... Equally clear is the defendant's constitutional right at some stage in the proceedings ... to have a fair hearing and a reliable determination on the issue of voluntariness ....

378 U.S. at 376–77, 84 S.Ct. at 1780–81, 12 L.Ed.2d at 915.

We note that Juvenile Rule 14(b), in pertinent part, was amended, effective March 1, 1984, to read as follows:

The probable cause phase of the [transfer] hearing shall be conducted in accordance with Rules 5.3 and 5.4(c), Arizona Rules of Criminal Procedure. Objections to evidence on the ground that it was acquired by unlawful means shall be inapplicable in the probable cause hearing.

Rule 5.3(b), Arizona Rules of Criminal Procedure, states:

Rules or objections calling for the exclusion of evidence on the ground that it was obtained unlawfully shall be inapplicable in preliminary hearings.

The comment to Criminal Rule 5.3(b), in pertinent part, explains that:

---

**3.** We note that no special action was filed in advance of the hearing challenging the juvenile court's refusal to conduct a closed hearing. It appears that this would have been the more appropriate remedy.

Rule 5.3(b) thus limits such issues as suppression motions or objections to the "competency" of the evidence—to decision by the trial court. This section reverses the ruling in *State v. Jacobson*, 106 Ariz. 129, 471 P.2d 1021 (1970), and adopts instead the federal standard. *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); Federal Rules of Criminal Procedure 5.1(a) (April, 1972).

We find no constitutional infirmity in Juvenile Rule 14. Appellant's right to a hearing and a reliable determination on the issue of voluntariness prior to trial is preserved in adult court by Criminal Rule 16.-2(b) which provides in pertinent part:

(b) **Burden of Proof on Pretrial Motions to Suppress Evidence.** The prosecutor shall have the burden of proving, by a preponderance of the evidence, the lawfulness in all respects of the acquisition of all evidence which he will use at trial....

In addition to the due process issue, appellant contends that he has a right to a voluntariness determination under Juvenile Rule 18, which provides as follows:

**Rule 18.   Statement of a Child**

No extra-judicial statement to a peace officer or court officer by the child shall be admitted into evidence in juvenile court over objection unless the person offering the statement demonstrates to the satisfaction of the court that: The statement was voluntary and before making the statement the child was informed and intelligently comprehended that he need not make a statement, that any statement made might be used in a court proceeding, and that he had a right to consult with counsel prior to making a statement and during the taking of the statement, and that, if he or his parents, guardian or custodian could not afford an attorney, the court would appoint one for him prior to any questioning.

Citing *Appeal in Juvenile Action 26289–3*, 122 Ariz. 521, 596 P.2d 47 (App.1979), appellant argues that Juvenile Rule 18 is applicable to a transfer hearing.

We find that Juvenile Rules 14(b) and 18 do not necessarily conflict and that they can be read in harmony. Rule 18 (effective April 15, 1970) is a general provision and requires a voluntariness hearing prior to the admission of a juvenile's extra-judicial statement to a peace officer. Rule 14(b) (Amended Dec. 23, 1983, effective March 1, 1984) is a specific rule relating to transfer hearings and clearly provides that objections to evidence on the ground that it was acquired by unlawful means shall be inapplicable in the probable cause phase of the hearing. It is equally clear that the ruling of Division 2 of this court in *Appeal in Juvenile Action 26289–3*, 122 Ariz. 521, 596 P.2d 47 (App.1979) (holding that a juvenile has a right to a voluntariness hearing in a transfer proceeding) has been overturned by the subsequent amendment to Rule 14(b).

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT A FINDING OF PROBABLE CAUSE

Appellant next argues that the juvenile court erred in finding probable cause to believe that appellant had committed three counts of first degree murder and three counts of armed robbery. We disagree.

In *Appeal in Juvenile Action J–84984*, 138 Ariz. 282, 284, 674 P.2d 836, 838 (1983), our Supreme Court noted that "probable cause requires a reasonably prudent person to find more probably than not the existence of the contested fact." In *State ex rel. Collins v. Superior Court*, 132 Ariz. 479, 647 P.2d 177 (1982), our Supreme Court stated:

To avoid exercises in semantics in the future, we should adopt one simple definition which says it all. With this in mind, we present the following definition: Probable cause exists if an individual has a reasonable belief that a crime has been committed and that the defendant committed that crime. Nothing more needs to be said.

132 Ariz. at 480, 647 P.2d 178.

We find that the state's evidence as previously summarized in this opinion suffi-

ciently supported the juvenile court's findings of probable cause.

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE TRANSFER ORDER

In arguing that he should not have been transferred for criminal prosecution, appellant points to the testimony of three psychiatrists and one psychologist who testified that he was under the influence of a heavy dose of LSD when he allegedly shot and killed his sister and adoptive parents, that he does not necessarily pose a threat to the safety of the community, and that he can most likely be successfully treated at a juvenile facility in Arizona called "The Alamo". This facility, it is argued, utilizes a psychotherapeutic process which was developed within the past decade to treat violent children who are emotionally disturbed. Appellant also points to his age of only 14 years 11 months at the time of the alleged offenses and the fact that the medical experts all agree that he suffers from deep psychological and emotional problems with long-standing chemical abuse.[4] Finally, appellant takes issue with a number of the factual findings of the juvenile court which he contends were unsupported by the evidence.

Since the amendment to Juvenile Rule 14, effective March 1, 1984, it is clear that community protection is now the guiding principle to be considered in transfer proceedings:

> If the court determines that there is probable cause to believe that the offense has been committed and that the child committed it, the court shall then determine whether the public safety or interest would best be served by the transfer of the child for criminal prosecution.

Rule 14(c), Rules of Procedure for the Juvenile Court.[5] Thus, the focus of the decisional process in a transfer hearing has now been directed toward the public safety and interest. This is not to say that the juvenile court no longer concerns itself with the best interest and welfare of the child. Indeed, specifically included in the rule as one of the matters to be considered and weighed is the "likelihood of reasonable rehabilitation of the child by the use of services and facilities currently available to juvenile court." Further, the rule directs the juvenile court to consider the sophistication and maturity of the child as well as the child's physical, mental and emotional condition. With the purpose and guidelines of Rule 14 in mind, we now turn to the evidence which supports the findings of the juvenile court.

There was probable cause to believe that appellant basically shot and killed his adop-

---

4. Notwithstanding appellant's emotional dysfunction, all of the experts agreed that he was of average intelligence.

5. The remainder of Rule 14(c) lists factors which the juvenile court shall consider in determining whether to waive jurisdiction and transfer the juvenile to adult court:

In deciding whether the jurisdiction of the juvenile court should be waived and the child transferred for criminal prosecution, the court shall consider the following factors: (1) the seriousness of the alleged offense and whether it was committed in an aggressive, violent, premeditated or willful manner; (2) whether the alleged offense was against person or against property, and whether personal injury resulted; (3) the sophistication and maturity of the child as determined by consideration of the child's age, intelligence, education, environment, emotional attitude and pattern of living;

(4) the child's physical, mental and emotional condition;
(5) the record and previous history of the child, including previous contacts with juvenile courts and law enforcement agencies in this and other jurisdictions, prior periods of probation in any court and their results, and any prior commitments to juvenile residential placements and secure institutions;
(6) whether the child has previously been transferred for criminal prosecution in this or any other state;
(7) the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child by the use of services and facilities currently available to juvenile court; and
(8) any other factors which appear to be relevant to the determination of the transfer issue.

tive parents and sister while they slept in their beds. There is evidence that the attack was unprovoked and that it was done for pecuniary gain. Prior to the incident in question, appellant had been incorrigible, rebellious and verbally abusive. He ran away from home repeatedly and was involved at an early age in the use of illegal drugs and alcohol. He supplemented his allowance by dealing in illicit drugs. Outside of the home, his behavior was generally disruptive, combative, and insubordinate. He was rebellious to authority figures and violated school rules, resulting in his expulsion from high school for cumulative violations. He had been afforded psychological counseling and services without apparent success. Prior to the current incident, appellant was referred to the Maricopa County Juvenile Court on four occasions for charges including criminal damage, shoplifting, and second degree burglary.

■■■■ Appellant relies heavily on the almost unanimous opinion of the mental health experts that appellant's alleged triple murder and related crimes did not reflect his true character and that it was a one-time occurrence brought on by drug abuse and was not likely to reoccur with proper treatment. This treatment, they opined, could most likely be successfully completed before it became necessary to release appellant back into society on his eighteenth birthday; i.e., June 16, 1987. However, the juvenile judge declined the invitation to engage in a game-of-chance and chose instead to rely on the objective evidence. Although the juvenile court, in determining whether to transfer a juvenile for trial as an adult, should inform itself as to all aspects of the behavioral sciences as they specifically apply and should consider and be receptive to experts in the field, the court should also properly consider the particular juvenile's record in the past and his amenability to the juvenile processes that the *record* discloses. *Appeal in Juvenile Action J–72804,* 18 Ariz.App. 560, 504 P.2d 501 (1972). Further, in juvenile transfer proceedings, the juvenile court is not bound by psychologists' recommendations any more than a trial judge is bound by the

recommendations of a probation officer in criminal proceedings in superior court. *Appeal in Juvenile Action J–93117,* 134 Ariz. 105, 654 P.2d 39 (App.1982).

■■■■ Appellant correctly points out that the evidence did not support the juvenile court's finding that the treatment and facilities available in the juvenile system would also be available to a juvenile who is incarcerated as an adult. Considered as a whole, however, we find that the court's order of transfer was adequately supported by the findings and the evidence. In that regard, one of the factors that Juvenile Rule 14 requires the court to consider in determining whether the jurisdiction of the juvenile court should be waived and the child transferred for criminal prosecution is "the seriousness of the alleged offense and whether it was committed in an aggressive, violent, premeditated, or wilfull manner." Under the alleged facts of the instant case, there was clearly no abuse of discretion on the part of the juvenile court.

For the foregoing reasons, the transfer order is affirmed.

EUBANK and KLEINSCHMIDT, JJ., concur.