724 P.2d 54

**In the Matter of the APPEAL IN COCONINO COUNTY JUVENILE ACTION NO. J–9896.**

**No. 1 CA–JUV 312.**

Court of Appeals of Arizona,
Division 1,
Department C.

Aug. 12, 1986.

Aspey, Watkins & Diesel by Bruce S. Griffen, Flagstaff, for appellant.

John Verkamp, Coconino County Atty. by Richard L. Palmatier, Flagstaff, for appellee.

## OPINION

PAUL G. ULRICH, Judge Pro Tem.

The central issue presented for our determination is whether the trial court abused its discretion in ordering appellant transferred from juvenile court to stand trial as an adult pursuant to Rule 14, Rules of Procedure for the Juvenile Court (RPJC). We hold the trial court abused its discretion in ordering appellant transferred and reverse.

## FACTS

On July 30, 1985, the Coconino County Attorney filed a delinquency petition in juvenile court charging appellant with two counts of theft, both class three felonies, and two counts of liability as an accomplice to armed robbery, one count of conspiracy to commit armed robbery, and one count of liability as an accomplice to first degree burglary, all class two felonies.

The charges were based on a series of events which commenced in July, 1985, when appellant ran away from her Washington, Missouri home with her boyfriend Stephen Brown. Appellant left home largely because her parents did not approve of her relationship with Brown. Appellant and Brown left Missouri in a stolen Pontiac Trans Am automobile. However, appellant did not then know it was stolen. Upon their arrival in Oklahoma City, the couple abandoned the Trans Am and Brown stole a 1982 Ford Bronco at gunpoint from two juveniles. Appellant admitted seeing the gun in Brown's gym bag but maintained Brown assured her he owned it solely for self-defense. The couple proceeded onward to Flagstaff, Arizona, where a 1984 Chevrolet Corvette automobile caught Brown's eye. Brown instructed appellant to wait for him down the street in the Bronco until he returned with the Corvette. He then forced his way into the home of the Corvette's owner, robbed the family at gunpoint of cash and the automobile keys, picked up appellant in the stolen automobile and then led law enforcement officers on a chase at speeds exceeding 130 miles per hour during a rainstorm. He eventually spun off the side of the road into a ditch and emerged from the vehicle holding a gun to his head and threatening suicide. Appellant stood by his side during the ensuing hour-long standoff. She apparently was responsible for convincing Brown to turn himself in. The record indicates appellant was aware Brown intended to steal the Corvette and attempted to dissuade him from engaging in any criminal activity. The record further indicates she did not remove herself from the situation because she was afraid to return home and face the

consequences of her actions and because she was concerned for Brown's safety.

Pursuant to the county attorney's petition, a transfer hearing was held before the Coconino County Juvenile Court on August 21, 1985. Appellant was then over seventeen and one-half years old, with less than five months remaining until her eighteenth birthday. The trial court heard testimony from court-appointed psychologist Dr. Eugene Moen, privately-retained psychologist Dr. Nancy Krebbs, appellant's probation officer Carmen Reyes and her father regarding appellant's potential for rehabilitation prior to her eighteenth birthday. The court also considered a pre-hearing transfer report prepared by Mr. Reyes, a psychological report prepared by Dr. Moen and nine character reference letters provided to the court by appellant's acquaintances.

By minute entry dated August 22, 1985, the trial court determined there was probable cause to believe the offenses had been committed and that appellant committed the offenses. *See* RPJC 14(b). The trial court further found, in accordance with RPJC 14(c), that the public safety and interest would best be served by transfer of appellant to adult court for prosecution. In a separate minute entry, the court ordered appellant released to the custody of her father. She then returned to her family home in Missouri. Pursuant to the transfer order, appellant was charged as an adult by a seven-count indictment filed August 29, 1985 in Coconino County Superior Court with the six charges initially set forth in the delinquency petition as well as an additional count of conspiracy to commit first degree burglary, a class two felony.

■ The juvenile court's jurisdiction terminated on January 7, 1986, appellant's eighteenth birthday. A.R.S. § 8–246(A); *Matter of Appeal in Juv. Action No. J–94518*, 138 Ariz. 287, 674 P.2d 841 (1983); *Matter of Appeal in Juv. Action No. J–86509*, 124 Ariz. 377, 604 P.2d 641 (1979) *cert. denied*, 445 U.S. 967, 100 S.Ct. 1660, 64 L.Ed.2d 245 (1980). However, because the present indictment is based upon the juvenile court's transfer order and no in-

dictment has been filed subsequent to appellant's reaching majority, we ordered further criminal proceedings in the superior court stayed pending disposition of this appeal. Since the criminal indictment and the superior court's jurisdiction in the criminal proceedings are based solely upon the transfer order, the appeal is not moot. *See, e.g., Matter of Appeal in Juv. Action No. J–93117*, 134 Ariz. 105, 654 P.2d 39 (App.1982). We have jurisdiction pursuant to A.R.S. § 8–236(A).

AMENDED RPJC 14

The procedure for ordering a transfer from juvenile to adult court is divided into two separate determinations: (1) whether there is probable cause to believe the offenses were committed and were committed by the juvenile, and (2) the determination of transfer. RPJC 14(a) and (b). Appellant challenges only the juvenile court's transfer determination on appeal. In ruling on the transfer determination, the juvenile court is required by RPJC 14(c), as amended effective March 1, 1984, to decide "whether the public safety or interest would best be served by the transfer of the child for criminal prosecution." In making this determination, the court is required to consider the following factors:

(1) the seriousness of the alleged offense and whether it was committed in an aggressive, violent, premeditated or willful manner;

(2) whether the alleged offense was against person or against property, and whether personal injury resulted;

(3) the sophistication and maturity of the child as determined by consideration of the child's age, intelligence, education, environment, emotional attitude and pattern of living;

(4) the child's physical, mental and emotional condition;

(5) the record and previous history of the child, including previous contacts with juvenile courts and law enforcement agencies in this and other jurisdictions, prior periods of probation in any court and their results, and any prior commit-

ments to juvenile residential placements and secure institutions;

(6) whether the child has previously been transferred for criminal prosecution in this or any other state;

(7) the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child by the use of services and facilities currently available to juvenile court; and

(8) any other factors which appear to be relevant to the determination of the transfer issue.

RPJC 14(c); *see also Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

The juvenile court made the following findings in accordance with the factors listed in RPJC 14(c):

1. That the offense charged was committed in a premeditated manner even though the juvenile did not directly commit the offense. She had knowledge of the primary actor's intent, his capabilities and of his past acts immediately prior to the commission of the crimes in this State. The fact that she tried to dissuade him from committing said crimes is of itself proof that she knew or had reason to believe that the crimes alleged were to be committed and that she should have taken evasive action through the appropriate agencies. The crimes themselves were of the most serious and violent nature and she only passively objected to their commission.

2. The crimes alleged threatened the lives of everyone involved. The juvenile knew of the potential threat involved.

3. That the juvenile appears to be a bright, intelligent person who, but for these events, has been a law abiding citizen. She has spent much of her formative years attending a parochial school. Her parents are interested, concerned parents. However, there appears to be a problem between them that now has to be addressed by counseling.

4. That the mental, physical and emotional condition of the juvenile appears to be fine.

5. That the child has an upstanding record up to the time of her running away.

6. That she has never been charged with a crime prior to this time.

7. That the Juvenile Court does not provide adequate or reasonable rehabilitation services and facilities for the juvenile in this case. The juvenile will be 18 within a short period of time (January 1, [sic] 1986). She has indirectly participated in several very serious crimes. Perhaps, she was a follower and not the perpetrator. Perhaps, she has pulled the wool over the eyes of everyone with whom she has come in contact. The safe approach for the juvenile and public mandates a more enlightening period of "rehabilitative" services than five months. From the testimony of the experts, the Court feels that five months is the inside figure for assured rehabilitation. This Court cannot gamble with the juvenile's future and the protection of the public in view of the seriousness of the allegations against her. The serious nature of the crimes and the division between the juvenile and her family are not matters that warrant a short curative or rehabilitative period.

8. That the Court cannot be concerned with the fact that the juvenile has been charged with felonies. The law provides for the treatment of crimes as misdemeanors and for the expungement of criminal records. The Court cannot speculate as Counsel has requested relative to how these matters will be handled by the prosecuting authorities. The Court would hope that justice would be best served by allowing the matter to run its course through the justice system.

9. That the interest of the public and the public's safety would best be served by transferring the child to adult court for prosecution. The Court further finds that it is in the best interest of the juvenile that the matter be transferred for adult prosecution.

In analyzing the juvenile court's findings, the various factors listed in RPJC 14(c) should be viewed in terms of the two broader policy considerations relevant to the transfer determination: (1) the public safety or interest, and (2) the juvenile's amenability to treatment. The primary focus of RPJC 14(c) as amended is upon the "public safety or interest." *See Appeal in Juv. Action No. J–96695*, 146 Ariz. 238, 705 P.2d 478 (App.1985). In considering the public safety or interest it is in turn necessary to focus on those factors objectively tending to indicate the danger a youth poses to society, *i.e.*, those factors which address the seriousness of the present offense and the seriousness and continuity of criminal activities as reflected in the juvenile's prior record. *See* RPJC 14(c)(1), (2), (5), (6) and (7), *supra.*

■ While public safety is clearly the primary focus under amended RPJC 14, the seriousness of the offense cannot be the sole basis for the transfer determination. *Matter of Appeal in Juv. Action No. J–94518*, 138 Ariz. 287, 674 P.2d 841 (1983); *Matter of Appeal in Juv. Action No. J–96430*, 142 Ariz. 515, 690 P.2d 816 (App. 1984); *Matter of Appeal in Juv. Action No. 53358–6*, 126 Ariz. 417, 616 P.2d 92 (App.1980) (Richmond, J., dissenting). The juvenile court must also address itself to the best interest and welfare of the juvenile, *Matter of Appeal in Juv. Action J–96695*, 146 Ariz. 238, 705 P.2d 478 (App. 1985), and consider the juvenile's individual circumstances and amenability to rehabili-

tation. *Matter of Appeal in Juv. Action No. J–94518*, 138 Ariz. 287, 290, 674 P.2d 841, 844 (1983); *see* RPJC 14(c)(3), (4) and (7).

## APPLICABLE EVIDENTIARY AND REVIEW STANDARDS

■ This court will not reverse a transfer ordered by the juvenile court absent an abuse of discretion. *Matter of Appeal in Juv. Action No. J–94518*, 138 Ariz. 287, 674 P.2d 841 (1983); *Matter of Appeal in Juv. Action No. J–98065*, 141 Ariz. 404, 687 P.2d 412 (App.1984). This standard of review finds its basis in Article 6, § 15 of the Arizona Constitution:

> The superior court shall have exclusive original jurisdiction in all proceedings and matters affecting ... delinquent children, or children accused of crime, under the age of eighteen years. The judges shall hold examinations in chambers for all such children concerning whom proceedings are brought, in advance of any criminal prosecution of such children, and may, *in their discretion*, suspend criminal prosecution of such children. The powers of the judges to control such children *shall be as provided by law.* (Emphasis added).

*See also, Matter of Appeal in Juv. Action No. J–94518, supra.*

The scope of the discretion accorded the juvenile court in the transfer determination is, pursuant to the constitution, that which "is provided by law." Prior to the 1984 amendment, the language of former RPJC 14(b) expressly granted the juvenile court broad discretion in making the transfer determination. The rule provided the juvenile court could transfer a juvenile to adult court if it found "probable cause and reasonable grounds to believe that" certain enumerated factors existed.[1] In *Matter of*

---

**1.** Former RPJC 14(b) provided in relevant part:
(b) The court may transfer the action for criminal prosecution to the appropriate court having jurisdiction of the offense if the court finds probable cause and reasonable grounds to believe that:

(1) The child is not amenable to treatment or rehabilitation as a delinquent child through available facilities; and
(2) The child is not commitable to an institution for mentally deficient, mentally defective or mentally ill persons; and

*Appeal in Juv. Action No. J–84984,* 138 Ariz. 282, 674 P.2d 836 (1983) our supreme court interpreted the "reasonable grounds" language to mean the juvenile court was required only to determine whether it was more probable than not the enumerated factors of former RPJC existed. The court further held juvenile courts were not, as a matter of procedural due process, required to apply a higher evidentiary standard in transfer proceedings. *Id.*

RPJC as amended effective March 1, 1984, contains no language regarding the proper evidentiary standard to be used by the trial court in making the transfer determination. However, we need not reach that issue in this case. Even if the evidentiary standard applicable under amended RPJC 14 remains probable cause, the facts of the present appeal require reversal. We therefore leave for another day the question whether the supreme court, by eliminating the "reasonable grounds" language in amended RPJC 14, intended to hold juvenile courts to a higher evidentiary standard in the second phase of transfer determination proceedings.

## PUBLIC SAFETY OR INTEREST

■ We now turn to consideration of those factors relevant to the public interest. It is apparent the trial court relied heavily upon the fact the offenses alleged in the delinquency petition were very serious in nature. *See* RPJC 14(c)(1) and (2). However, the seriousness of offenses charged is relevant to a determination regarding the public safety only to the extent it accurately indicates the juvenile's dangerousness. In this regard, it is important to recognize appellant's technical criminal responsibility for the offenses charged was as an accomplice and co-conspirator. She neither encouraged nor actively participated in any of Brown's criminal activities. The trial court appears to have faulted appellant's passive nature, noting she failed to "take evasive action through the appropriate agencies" when she became

aware of Brown's criminal intent. However, such passivity cannot serve as the exclusive basis for regarding appellant to be dangerous and a threat to society.

Although accomplice and co-conspirator liability is for many purposes essentially equivalent to commission of the underlying offense, it makes no sense to equate the two in determining whether a juvenile presents a threat to the public safety for purposes of RPJC 14(c). Where the offenses charged do not accurately reflect the child's dangerousness, as may often be the case in accomplice or co-conspirator liability situations, the weight given this factor in the transfer determination should be reduced accordingly.

A second objective criterion to be considered by the juvenile court in assessing the danger a juvenile presents to society is the existence of a prior record. *See* RPJC 14(c)(5) and (6). In this regard, the present record reflects a complete absence of any prior wrongdoing by appellant. Rather than demonstrating prior negative contact with the law, the record instead demonstrates appellant has involved herself in a positive way in many community activities and organizations in Missouri. It also contains many letters from citizens of her hometown attesting to her character and describing her participation in activities ranging from Students Against Drunk Drivers, an organization opposed to adolescent drinking, to her involvement in a church youth group and several extra-curricular high school sports programs.

We believe it necessary to emphasize that the record clearly reveals that witnesses at the transfer hearing *unanimously* testified appellant presented no danger to society. Probation officer Carmen Reyes testified he did not view appellant as a social danger and did not believe she needed to be incarcerated to protect society. Psychologist Eugene Moen also testified he did not believe appellant presented a danger to society and stated he did not foresee

(3) The safety or interest of the public requires that the child be transferred for crimi-

nal prosecution.

any likelihood of recurrent criminal behavior by appellant.

The trial court's finding transfer was in the public interest appears based to some extent on its perception of appellant's demeanor as well as upon the serious nature of the offenses charged. In its findings, the court remarks, "[p]erhaps, [appellant] has pulled the wool over the eyes of everyone with whom she has come in contact." It is true the juvenile court is to be "accorded discretion because it is the only unbiased party in a position to observe the proceeding and the demeanor of witnesses and litigants." *Matter of Appeal in Juv. Action No. J–94518*, 138 Ariz. 287, 290, 674 P.2d 841, 844 (1983). However, the trial court's wholly subjective speculation that in this case appellant may have fooled all into believing she is a good person is without any apparent objective factual basis in the record and thus cannot serve as the basis for finding appellant is a danger to society.

In sum, the seriousness of the offenses charged in this case are not indicative of the danger appellant presents to society because her participation in the offenses was at most that of a passive accomplice and co-conspirator. She did not actively participate in or encourage commission of any of the underlying offenses. Her prior record indicates she is regarded as an upstanding hard-working individual whose involvement in the community has been in furtherance of rather than detrimental to the public safety and welfare. Finally, all witnesses at the hearing testified appellant did not present a danger to society. We therefore conclude the evidence presented was insufficient for the juvenile court to find it more probable than not the public safety and interest would best be served by ordering appellant transferred to adult court.

## AMENABILITY TO REHABILITATION

We turn next to those factors relevant to a determination of appellant's amenability to rehabilitation. *See* RPJC 14(c)(3), (4) and (7). The record fully supports the juvenile court's finding that appellant's mental, physical and emotional condition were fine and that she was a bright and intelligent person. Dr. Moen testified that in his opinion appellant was a normal young woman with no mental dysfunction or psychological disorders. His report further noted appellant had no difficulty discerning right from wrong. He also testified during the hearing there was nothing in her attitude that would work against rehabilitation. Similarly, probation officer Carmen Reyes testified that the fact appellant had a positive psychological evaluation was a factor favoring rehabilitation. Reyes further testified there was no question appellant had shown remorse with respect to her criminal conduct and had been totally cooperative with law enforcement officials during the investigation. Dr. Nancy Krebbs also testified she believed appellant was rehabilitable. Finally, both Drs. Moen and Krebbs testified appellant was relatively immature for her age.

While there was no disagreement appellant was bright, emotionally stable and receptive to rehabilitation, the juvenile court nevertheless concluded transfer to adult court would be in appellant's best interests. Its conclusion was based on its belief appellant could not receive the degree of family counseling she needed in view of the facilities and services available within the five-month period remaining until her eighteenth birthday. However, after a careful review of the record, we find the evidence presented requires a contrary conclusion. The record establishes (1) appellant had made great strides in resolving difficulties with her parents by the time of the hearing; (2) the most desirable setting for rehabilitation for appellant would be at her home in Missouri; and (3) in this setting, appellant could be rehabilitated before her eighteenth birthday. We examine each of these considerations.

First, all witnesses testified the major source of friction between appellant and her parents was her relationship with Stephen Brown, a problem that was in large part resolved by the time of the transfer hearing. Probation officer Reyes testified

Brown was the main source of difficulty between appellant and her family. He testified that she realized her parents' assessment of Brown's character had been correct, that she was willing to try to correct the difficulties at home and that the support of her family was a factor in favor of her rehabilitation. Dr. Moen testified appellant's parents were "very willing" to participate in family counseling to assist appellant in her rehabilitation. Dr. Krebbs testified in her opinion, the fact Brown presented the only problem in the history of appellant's relationship with her parents made rehabilitation within a short period of time possible if appellant and her mother worked together to re-establish communication. Dr. Krebbs further testified both appellant and her father had expressed a strong desire to participate in any counseling that was prescribed. Appellant's father testified that they were a very close family, that the only difficulty he and his wife had experienced with appellant was her relationship with Brown, that appellant wanted to return home and "mend the fences she [had] broken," and that the family was devoted to ensuring all would go well for appellant in the future.

Second, the juvenile court's determination that adequate or reasonable rehabilitation facilities were unavailable is without factual basis in the record. Probation officer Reyes testified the in-state facilities available were inadequate because the local guidance center was not set up to accomodate persons for extended periods of time, the Department of Corrections' "New Dawn" program was overcrowded, and the "girl's ranch" was designed for incorrigible delinquents. However, on cross-examination, Reyes admitted he had not considered the possibility of transferring appellant to Missouri's juvenile system. He testified he had no reason to believe Franklin County, Missouri's juvenile system could not accomodate appellant and immediately commence the transfer process. He also testified appellant did not need further incarceration to punish or rehabilitate her, and that in his opinion, it would be better to return her to her hometown and the parochial high

school setting than to keep her in Flagstaff.

Dr. Moen also testified he was unfamiliar with the rehabilitation facilities available in Missouri. When asked what he believed was necessary to successfully rehabilitate appellant, Dr. Moen responded:

I think family counseling would be absolutely required to resolve some of the issues that relate to the current circumstances. I think it would also benefit her to become involved in activities that have been productive for her in the past, a part-time job, completing her senior year of high school; and I think maybe some individual counseling and guidance would benefit [appellant] also.

Dr. Krebbs testified she was aware of a mental health center in St. Louis, Missouri, an hour away from appellant's hometown where appellant could receive the counseling she needed. Dr. Krebbs further testified there would be no problem in administering such a rehabilitation program monitored by a probation officer. She further testified that with the proper counseling, appellant could be rehabilitated within three to five months. Appellant's father testified he and his wife had investigated the counseling facility available to them in Missouri, including a local hospital counseling service and Franklin County Community Health Services. He also testified that the priest in the church where appellant was actively involved had offered to counsel her if requested.

Finally, all witnesses testified several factors rendered appellant amenable to rehabilitation within the five-month time frame. Mr. Reyes testified that appellant's cooperation with the police department, her remorse, her lack of prior record, her supportive family, her lack of mental or emotional problems and her honesty were important contributions to her rehabilitative potential. Dr. Moen specifically addressed the court's concern regarding the short time frame available within which to rehabilitate appellant:

THE COURT: Counsel, I don't have any problems about whether she can be rehabilitated. The time frame is the biggest problem the court has. We are talking about a 5–month-period of time. I think that more likely than not, she can be rehabilitated without any problem whatsoever, but it's the time frame that the court has to work with.

QUESTION (by Appellant's counsel): Doctor [Eugene Moen], perhaps you can speak to that issue. I asked you whether you felt a 5–month limitation or exposure period would be enough time to accomplish any rehabilitation you feel is necessary and you told us that it would be. Why is that your opinion?

ANSWER: Well, I think it would be for a number of reasons. One is I think a substantial amount of rehabilitation in terms of reconciliation with the family has already occurred and that was a major roadblock that since has been resolved. I think three to five months is sufficient time to become re-established with patterns that have been productive in the past and led Cynthia to leading a productive life, free of problems and difficulties with law enforcement authorities in the past.

Dr. Moen went on to state the absence of problems in appellant's past, her church activities, her good performance in school, her supportive family, her attitude and her upbringing were productive patterns appellant had established that made her amenable to rehabilitation within a short period of time. Dr. Moen specifically testified in his opinion, in light of these factors, there was nothing to indicate appellant would not be rehabilitated within five months. Dr. Krebbs testified she also believed appellant could be rehabilitated through family counseling within five months because of her background, support system, and the fact the only disagreement within the family had been with respect to appellant's relationship with Brown. Based on the foregoing review of the record, we find there is no version of the evidence from which the juvenile court could reasonably have found transfer to adult court more probably in the appellant's best interest than not. *Matter of Appeal in Juv. Action No. J–84984*, 138 Ariz. 282, 674 P.2d 836 (1983).

In conclusion, we hold the trial court abused its discretion in ordering appellant transferred to adult court. The evidence was insufficient to find it more probable than not appellant presented a threat to the public safety and interest. Improper weight was accorded the seriousness of the offenses charged in light of appellant's limited accomplice and co-conspirator participation. Appellant had no prior record whatsoever and was involved in her community in a positive way. The evidence is further insufficient to sustain a finding transfer was in appellant's best interest. All testimony and other evidence in the record indicated appellant could be rehabilitated before age eighteen if returned to her home and given appropriate counseling.

While it is true the juvenile court is not bound by psychologists' recommendations, *Matter of Appeal in Juv. Action No. J–93117*, 134 Ariz. 105, 654 P.2d 39 (App. 1982), the trier of fact may not arbitrarily reject uncontradicted and unimpeached evidence from disinterested witnesses where nothing in evidence or the circumstances casts suspicion upon it. *Cf., State v. Roberts*, 138 Ariz. 230, 673 P.2d 974 (App.1983).

The transfer order is reversed and vacated. There is thus no jurisdictional basis for the presently pending criminal proceedings. Our prior stay will therefore remain in effect to permit the superior court to consider a motion to dismiss those proceedings without prejudice for lack of jurisdiction.

CONTRERAS, P.J., and GRANT, J., concur.

NOTE: Paul G. Ulrich was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. Art. VI, § 3 and A.R.S. §§ 12–145–47.