741 P.2d 1218

**In the Matter of the Appeal In COCONINO COUNTY JUVENILE ACTION NO. J-9896.**

**No. CV-86-0530-PR.**

Supreme Court of Arizona,
En Banc.

June 11, 1987.

John Verkamp, Coconino Co. Atty. by Richard L. Palmatier, Fred Newton, Deputy Coconino Co. Attys., Flagstaff, for appellee.

Aspey, Watkins & Diesel by Bruce S. Griffen, Flagstaff, for appellant.

HOLOHAN, Justice.

Appellant was charged in a petition filed in juvenile court with two counts of theft, one count of accomplice to burglary, two counts of accomplice to armed robbery, and one count of armed robbery. The county attorney filed a motion to transfer the charges against appellant to superior court where appellant would be prosecuted as an adult. The Coconino County Juvenile Court held a hearing on the motion and thereafter ordered the case transferred to superior court. Subsequently, appellant was indicted by the county grand jury but proceedings in the superior court were stayed while appellant appealed the transfer order. The Court of Appeals, 150 Ariz. 435, 724 P.2d 54, reversed and vacated the transfer order. Both the appellant and the State filed petitions for review. We accepted review on the State's cross-petition for review, and denied review on the appellant's petition. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and Ariz.R. P.Juv.Ct., Rule 28, 17A A.R.S.

The sole issue to be decided is whether the juvenile court abused its discretion in transferring the charges against appellant to the superior court for prosecution as an adult.

## FACTS

At the time of the events in question, appellant was a 17–year-old high school student living with her parents in Washington, Missouri. She grew up in a regimented, protected environment, and attended parochial school for most of her education. She was involved in school and church activities and has had no previous encounters with the juvenile system. Recently, however, appellant had had some conflicts with her parents over her relationship with an older high school student, Steven Brown. Her parents thought Brown was not a good influence on her and moved her to a different school to keep her from seeing him.

The discord at home intensified until eventually appellant ran away with Brown sometime near the end of July 1985. The two initially traveled in a car that appellant later found out was stolen. They abandoned the car in Oklahoma City and Brown stole a Ford Bronco, which they drove to Flagstaff, arriving on July 29. In Flagstaff, Brown spotted a Chevrolet Corvette parked outside of a residential home. While appellant waited down the street in the Bronco, Brown entered the home and robbed the family at gunpoint of cash and keys to the Corvette. Appellant drove the Bronco a short distance to meet Brown in the Corvette and they transferred their belongings to the Corvette, abandoning the Bronco. Brown then led law enforcement officers on a high-speed chase that ended when the Corvette went off the road into the ditch. When Brown emerged from the car holding a gun to his head and threatening suicide, appellant ran to him and helped convince him to surrender to the officers.

Appellant was charged as a juvenile with two counts of theft (both class three felonies), and two counts of accomplice to burglary, one count of accomplice to armed robbery, and one count of armed robbery (all class two felonies).[1] The juvenile court held a transfer hearing on August 21, 1985, less than five months before appellant's eighteenth birthday on January 7, 1986.

At the hearing, the juvenile court heard testimony from five witnesses on the transfer issue: Carmen Reyes, juvenile probation officer; Dr. Eugene Moan, court-appointed psychologist; Dr. Nan Kribs, privately-retained psychologist; appellant's father; and Mary Reagan, juvenile probation officer. Reyes testified that appellant was not a social danger and was capable of being rehabilitated, partially because appellant had never been involved before in any juvenile proceedings. Reyes' main concern was that proper rehabilitation facilities were not available in Arizona. Reyes testified that appellant did not need custodial care and therefore, under an interstate compact between Arizona and Missouri, appellant's rehabilitation program could be administered in Missouri so that appellant could return home. However, Reyes was unfamiliar with any of the treatment alternatives in Missouri. Furthermore, although Reyes felt that substantial progress could be made in the five months before appellant turned 18, he thought it would take more than five months to complete rehabilitation.

The psychologists disagreed with Reyes. They both testified that appellant could be rehabilitated in five months. Dr. Moan testified that appellant's lack of problems with law enforcement in the past, her above-average school performance, her involvement in church activities, and her supportive family were all factors favoring his conclusion that appellant could be rehabilitated in five months. Dr. Moan also stated that appellant presented no danger to society. Both psychologists recommended that appellant rejoin her family, return to the parochial school she had been attending, and receive extensive family and individual counseling.

Appellant's father testified that his daughter had not caused problems in the past. He stated that the family would cooperate fully in any rehabilitation measures that were ordered.

1. Steven Brown, appellant's boyfriend, was indicted on several charges, pled guilty, and was sentenced to seven years in prison.

Juvenile probation officer Mary Reagan's testimony concerned only transfer procedures used in Arizona under the interstate compact. She testified that the paperwork necessary to transfer a juvenile to another state under the compact generally took two to three months to complete.

Based on this testimony, the Juvenile court made the following findings and conclusions:

1. That the offense charged was committed in a premeditated manner even though the juvenile did not directly commit the offense. She had knowledge of the primary actor's intent, his capabilities and of his past acts immediately prior to the commission of the crimes in this State. The fact that she tried to dissuade him from committing said crimes is of itself proof that she knew or had reason to believe that the crimes alleged were to be committed and that she should have taken evasive action through the appropriate agencies. The crimes themselves were of the most serious and violent nature and she only passively objected to their commission.

2. The crimes alleged threatened the lives of everyone involved. The juvenile knew of the potential threat involved.

3. That the juvenile appears to be a bright, intelligent person who, but for these events, has been a law abiding citizen. She has spent much of her formative years attending a parochial school. Her parents are interested, concerned parents. However, there appears to be a problem between them that now has to be addressed by counseling.

4. That the mental, physical and emotional condition of the juvenile appears to be fine.

5. That the child has an upstanding record up to the time of her running away.

6. That she has never been charged with a crime prior to this time.

7. That the Juvenile Court does not provide adequate or reasonable rehabilitation services and facilities for the juvenile in this case. The juvenile will be 18 within a short period of time (January 1, 1986) [sic]. She has indirectly participated in several very serious crimes. Perhaps, she was a follower and not the perpetrator. Perhaps, she has pulled the wool over the eyes of everyone with whom she has come in contact. The safe approach for the *juvenile* and the public mandates a more enlightening period of "rehabilitative" services than five months. From the testimony of the experts, the Court feels that five months is the inside figure for assured rehabilitation. This Court cannot gamble with the juvenile's future and the protection of the public in view of the seriousness of the allegations against her. The serious nature of the crimes and the division between the juvenile and her family are not matters that warrant a short curative or rehabilitative period.

8. That the Court cannot be concerned with the fact that the juvenile has been charged with felonies. The law provides for the treatment of crimes as misdemeanors and for the expungement of criminal records. The Court cannot speculate as Counsel has requested relative to how these matters will be handled by the prosecuting authorities. The Court would hope that justice would be best served by allowing the matter to run its course through the justice system.

9. That the interest of the public and the public's safety would best be served by transferring the child to adult court for prosecution. The Court further finds that it is in the best interest of the juvenile that the matter be transferred for adult prosecution.

The court then ordered the case transferred and accordingly, appellant was charged as an adult in Coconino County Superior Court on August 29, 1985.

Appellant appealed the transfer order and the Court of Appeals stayed the proceedings in superior court pending its disposition of the appeal. The Court of Appeals reversed and vacated the transfer order, finding that the juvenile court had abused its discretion. *In re Appeal in Coconino County Juvenile Action No. J–9896*, 150 Ariz. 435, 724 P.2d 54 (App.1986). The State filed a cross-petition for review of the transfer issue, which we granted. We vacate the opinion of the Court of Appeals, and reinstate the transfer order of the juvenile court.

## ANALYSIS

Juvenile Court Rule of Procedure 14(c), 17A A.R.S., lists the following factors that a juvenile court shall consider in determining whether to waive jurisdiction and transfer the case to superior court for prosecution as an adult:

(1) the seriousness of the alleged offense and whether it was committed in an aggressive, violent, premeditated or willful manner;

(2) whether the alleged offense was against person or against property, and whether personal injury resulted;

(3) the sophistication and maturity of the child as determined by consideration of the child's age, intelligence, education, environment, emotional attitude and pattern of living;

(4) the child's physical, mental and emotional condition;

(5) the record and previous history of the child, including previous contacts with juvenile courts and law enforcement agencies in this and other jurisdictions, prior periods of probation in any court and their results, and any prior commitments to juvenile residential placements and secure institutions;

(6) whether the child has previously been transferred for criminal prosecution in this or any other state;

(7) the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child by the use of services and facilities currently available to juvenile court; and

(8) any other factors which appear to be relevant to the determination of the transfer issue.

A juvenile court is required to state its reasons for transferring a case to adult court. *In re Appeal in Maricopa County, Juvenile Action No. J–94518*, 138 Ariz. 287, 290, 674 P.2d 841, 844 (1983). The decision by the juvenile court to transfer the case will not be overturned absent a clear abuse of discretion. *Id.*

The findings of the juvenile court in this case directly parallel the factors listed in Rule 14(c). It is clear from the findings that the judge relied on factors (1), (2) and (7) of Rule 14(c) in deciding the transfer issue. In his first finding, the judge found that the offenses charged were of a serious and violent nature committed in a premeditated manner, even though the appellant did not directly commit them. In his second finding, the judge stated that the alleged crimes were committed against persons. Finally, in his seventh finding, the judge found that the juvenile court did not have adequate rehabilitation facilities available for the appellant; furthermore, the 5–month period before appellant's 18th birthday was insufficient time to assure rehabilitation. *See In re Pima County Juvenile Action No. J–70107–2*, 149 Ariz. 35, 36, 716 P.2d 404, 405 (1986) (jurisdiction of juvenile court terminates on juvenile's 18th birthday).

We do not find that the juvenile court abused its discretion in ordering the appellant transferred to superior court for prosecution as an adult. Although both psychologists who examined appellant testified that five months would be sufficient time for rehabilitation and recommended that the proceedings not be transferred, the juvenile court was not bound by their recommendations. *See In re Appeal in Juvenile Action J–96695*, 146 Ariz. 238, 246, 705 P.2d 478, 486 (App.1985). The judge also heard testimony from Probation Officer Reyes that complete rehabilitation would take longer than five months and that, in any case, Arizona lacked adequate rehabilitation facilities. The case could be transferred to Missouri to administer the neces-

sary rehabilitation program, but the transfer process would consume two to three months of the five months left in the juvenile court's jurisdiction. Clearly, all of the juvenile court findings were appropriate considerations upon which a transfer to adult court can be based under Rule 14(c). *E.g., In re Appeal in Pinal County Juvenile Action No. J–1444*, 148 Ariz. 370, 714 P.2d 863 (App.1986) (juvenile court did not abuse its discretion in ordering transfer of 17–year, 3–month old juvenile charged with rape); *In re Appeal in Maricopa County Juvenile Action No. J–98065*, 141 Ariz. 404, 687 P.2d 412 (App.1984) (juvenile court did not abuse its discretion in ordering transfer of 17–year, 9–month old juvenile charged with car theft).

Some might disagree with the juvenile court's conclusion, but we find that there was support for the decision; therefore, the juvenile court did not abuse its discretion in ordering appellant's case transferred to superior court. The opinion and stay order of the Court of Appeals is vacated. The order of the juvenile court to transfer the case to superior court is affirmed.

GORDON, C.J., and CAMERON, J., concur.

Justice JAMES MOELLER did not participate in the determination of this matter.

FELDMAN, Vice Chief Justice, dissenting.

The majority disposes of the only issue in the case with one sentence in the last paragraph of the opinion. That sentence reads:

> Some might disagree with the juvenile court's conclusion, but we find that there was support for the decision; therefore, the juvenile court did not abuse its discretion in ordering appellant's case transferred to adult court.

The majority does not tell us what support it finds for the juvenile court's conclusion. Three court of appeals judges found none; I agree with them.

As the court of appeals noted, the juvenile in question "neither encouraged nor actively participated in any of Brown's criminal activities." *In re Coconino County Juvenile Action No. J. 9896*, 150 Ariz. 435, 440, 724 P.2d 54, 59 (App.1986). In fact, the trial court itself found that the juvenile's fundamental culpability was in failing to "take evasive action through the appropriate agencies" when she learned of her friend's plans. *Id.* In this light, I believe that the court of appeals correctly outlined the three factors that demonstrate the absence of any support for the conclusion that the juvenile should be treated as an adult. These are:

1. "Although accomplice and co-conspirator liability is for many [legal] purposes essentially equivalent to commission of the underlying offense, it makes no sense to equate the two in determining whether the juvenile presents a threat to the public safety...." *Id.*

2. The record shows there was no prior wrongdoing by the juvenile. *Id.* at 440–41, 724 P.2d at 59–60.

3. The witnesses "unanimously testified" that the juvenile presented no danger to society. The majority of the court argues that the juvenile judge is not required to accept expert testimony. While this is true, he is required to have some reason for even a discretionary finding. Nothing in this record, nothing in the juvenile's prior record, and nothing in the evidence before the trial judge provide any support for finding that this juvenile presented any danger to society. *Id.* at 441, 724 P.2d at 60.

It is one thing to defer to the discretion of the trial judge. It is another to affirm conclusions that are unsupported by and directly contrary to every fact or opinion contained in that record. To allow this is to impose the subjective standards of each judge in place of objective, articulated standards to which all judges can be held.

I dissent.